RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0222P (6th Cir.)
File Name: 04a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　*v.*　　　　　　　No. 03-1654

FELIX HERRERA,
　　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00259—Richard A. Enslen, District Judge.

Argued: June 16, 2004

Decided and Filed: July 12, 2004

Before: RYAN and COOK, Circuit Judges; CLELAND,
District Judge.*

———————

## COUNSEL

**ARGUED:** Lawrence J. Phelan, HAEHNED & PHELAN,
Grand Rapids, Michigan, for Appellant. Andrew B. Birge,

———————

*　The Honorable Robert H. Cleland, United States District Judge for
the Eastern District of Michigan, sitting by designation.

UNITED STATES ATTORNEY, Grand Rapids, Michigan,
for Appellee. **ON BRIEF:** Lawrence J. Phelan, HAEHNED
& PHELAN, Grand Rapids, Michigan, for Appellant.
Andrew B. Birge, UNITED STATES ATTORNEY, Grand
Rapids, Michigan, for Appellee.

———————

## OPINION

———————

CLELAND, District Judge. Defendant Felix Herrera
appeals a sentencing determination that qualified him as a
career offender pursuant to § 4B1.1 of the United States
Sentencing Guidelines (U.S.S.G.). Defendant claims that the
trial court erred in concluding that his previous state felony
convictions for attempted taking of a firearm from a peace
officer, Mich. Comp. Laws § 750.479b(2), and for resisting
and obstructing a police officer, Mich. Comp. Laws
§ 750.479(a), were "violent crimes" within the meaning of
U.S.S.G. § 4B1.2(a). For the reasons set forth below, we
agree with the district judge's decision as to the first of the
two predicate convictions, find it unnecessary to reach the
question of the second predicate conviction and AFFIRM the
judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On July 22, 2002 in Lansing, Michigan, Defendant sold
crack cocaine to an undercover officer and was confronted by
a team of surveillance officers wearing jackets with the word
"POLICE" emblazoned on them. According to the officers at
the scene, Defendant initially did not comply with their
command to lie on the ground, but pulled a gun from his
waistband and swung it toward the officers. The officers
dove for cover, and Defendant soon decided to lower his gun
and obey the officers' commands. On October 24, 2002, a
federal grand jury returned a three-count indictment against
Defendant, charging him with knowingly and intentionally

possessing cocaine base (crack) with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and carrying and brandishing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Defendant entered a guilty plea to the possession with intent to distribute charge (Count I) and the carrying and brandishing a firearm charge (Count III) on January 6, 2003. Pursuant to the plea agreement, the final determination as to the length of Defendant's sentence rested solely with the trial court, which would consider a presentence report and objections or suggestions from the government and Defendant. The government agreed to dismiss the felon in possession charge (Count II).

About March 24, 2003, a presentence report was prepared, indicating that Defendant had been previously convicted in state court on numerous occasions. Among Defendant's myriad of past convictions were three convictions that the U.S. probation officer suggested were "crimes of violence" under the U.S.S.G.: (1) a felonious assault which occurred on June 25, 1998; (2) an attempt to commit the crime of disarming a police officer which occurred on August 9, 2001; and (3) resisting and obstructing a police officer also on August 9, 2001. The last two offenses arose from the same occurrence in which Defendant fled on foot after police pulled him over for a traffic stop. When an officer caught and reached for Defendant, Defendant grabbed the officer's gun and tried to pull it from its holster. The police officer was able to subdue Defendant and place him into custody without further incident. Based upon these offenses, the probation officer concluded that Defendant should be classified as a career offender pursuant to U.S.S.G. § 4B1.1, under which a defendant with two violent felony convictions or drug trafficking felony convictions is to be classified as a career offender. In a memorandum filed May 1, 2003, Defendant objected to the probation officer's career offender recommendation.

On May 8, 2003, Defendant appeared before the district court for sentencing and reasserted his objection to the presentence report. The court rejected his challenge, finding that the conviction for attempt to disarm a police officer was a crime of violence as defined at U.S.S.G. § 4B1.2(a). The court also went on to decide, "for the sake of completeness," that Defendant's conviction for resisting and obstructing a police officer also constituted a crime of violence. The effect of this determination was to increase Defendant's offense level from Level 13 to Level 29 and his guideline range from 33-41 months to 151-188 months, accounting for a three-level reduction for acceptance of responsibility. Defendant's criminal history category, however, was unaffected because Defendant was scored in Category VI based upon his prior record.

Defendant was sentenced to 160 months on Count I and 84 months on Count III, to be served consecutively for a total of 244 months imprisonment. Defendant was ordered to pay a fine of $2,140.00 and $200.00 in special assessments, and was required to remain on supervised release for a term of five years after his release from prison. On May 15, 2003, Defendant filed a timely notice of appeal.

## II.  STANDARD OF REVIEW

The district court's interpretation of the Sentencing Guidelines is a question of law, which we review *de novo*. *See United States v. Garza*, 999 F.2d 1048, 1051 (6th Cir. 1993); *see also United States v. Arnold*, 58 F.3d 1117, 1120 (6th Cir. 1995) (applying *de novo* standard of review to the district court's construction of the term "crime of violence" in the Guidelines).

### III. DISCUSSION

Pursuant to U.S.S.G. § 4B1.1:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Defendant does not dispute that the offense of conviction is a felony committed after he attained the age of eighteen. He agrees also that his 1998 conviction for felonious assault qualifies as a violent crime. Defendant's contention is that neither his conviction for attempting to disarm a police officer nor his conviction for resisting and obstructing an officer qualify as a "crime of violence" for purposes of § 4B1.1(a).

The Guidelines define a "crime of violence" as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added). The application notes further clarify the definition:

For purposes of this guideline--"Crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

"Crime of violence" includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) *or, by its nature, presented a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2 (application note 1) (emphasis added).

### A. Michigan Compiled Laws § 750.479b(2): Attempted Taking of a Firearm from a Peace Officer

No panel of this Circuit has previously decided whether a conviction for attempting to disarm a police officer, Mich. Comp. Laws § 750.479b(2), is a "crime of violence" under the Guidelines. To examine this question, a "categorical approach" is used. *See United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999); *see also United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995) (citing as analogous *Taylor v. United States*, 495 U.S. 575 (1990)). Under this approach, the facts and circumstances underlying the defendant's felony conviction are generally of no consequence, and a court does no more than examine the definition of the crime provided by the state legislature. *See Arnold*, 58 F.3d at 1121 ("[T]he categorical approach avoids the impracticability and unfairness of allowing a sentencing court to engage in a broad factfinding inquiry relating to a defendant's prior offenses."). If the court were not convinced,

however, that the statutory formulation of the offense encompassed conduct that posed a serious potential of physical injury, it could examine the indictment for the specific conduct charged. *See United States v. Arnold*, 58 F.3d 1117, 1123 (6th Cir. 1995).

In examining the criminal statute, the court should not think only of the hypothetically possible but unusual conduct that might constitute an offense thereunder, but rather should focus on the ordinary way that conduct would violate the statute. *See United States v. Campbell*, 256 F.3d 381, 396 (6th Cir. 2001) ("In deciding whether the statutory crime constitutes a 'crime of violence,' we examine 'the typical run of conduct,' for this sort of offense.").

The parties do not dispute that the offense of attempting to disarm a police officer is not enumerated as a crime of violence under the Guidelines and does not include the use, attempted use, or threatened use of physical force as a necessary element. Rather, their argument centers on the third method for identifying a crime of violence--whether the offense involves a "serious potential risk of physical injury to another." U.S.S.G. 4B1.2(a)(2).

The elements of Michigan Compiled Laws § 750.479b(2), disarming a police officer, are:

(a) The individual knows or has reason to believe the person from whom the firearm is taken is a peace officer or a corrections officer.

(b) The peace officer or corrections officer is performing his or her duties as a peace officer or a corrections officer.

(c) The individual takes the firearm without consent of the peace officer or corrections officer.

(d) The peace officer or corrections officer is authorized by his or her employer to carry the firearm in the line of duty.

Mich. Comp. Laws § 750.479b(2).

Defendant first focuses on the word "serious" in the phrase "presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(1), and argues that there is not, inherent in the disarming statute, a risk of serious injury. We note, however, that the adjectives "serious" and "potential" both modify the word "risk," not "injury." Actual physical injury need not be certain upon the commission of the offense. There need only be a risk of injury for which there is a serious potential in order to satisfy the Guideline. We find that an affront to a police officer's authority in the way contemplated in the statute presents not only a potential, but also a serious risk.

The statute quite unmistakably contemplates a scenario in which the firearm is taken *from* a police officer. Before setting out the elements of the offense, the opening sentence of the statute states that the statute is designed to punish "[a]n individual who takes a firearm *from the* lawful *possession* of a peace officer or a corrections officer." Mich. Comp. Laws § 750.479b(2). Further, the elements require the firearm be taken while the officer is performing his duties by a person who "believe[s] the person *from whom the firearm is taken* is a peace officer." *Id.* (emphasis added); *see also People v. Cooks*, No. 210025, 2000 WL 33521057, *2 (Mich. Ct. App. Mar. 24, 2000) ("[T]he disarming an officer statute is intended to prevent someone from attempting to and/or gaining access to an officer's firearm, thereby causing injury to the officer.").

In almost all circumstances, an officer will have his firearm on his person or in the close vicinity when performing his official duties. It is obvious that a perpetrator's attempt to gain possession of an officer's weapon creates a situation

where there is not only a serious potential risk of physical injury, but most likely an extremely heightened risk of serious or even deadly injury. An officer will try to repel the attempt, which would create a risk of injury to the suspect and could also endanger anyone in the area. Further, the officer may be injured in the scuffle that ensues, especially if the suspect actually dispossesses the officer of his gun. The government's review of Michigan case law involving attacks against officers amply demonstrates the kind of risks involved. *See, e.g., People v. Williams*, No. 228730, 2002 WL 31424779, *2 (Mich. Ct. App. Oct. 29, 2002) ("violent, violent, lengthy struggle" between two officers and suspect); *People v. Pope*, No. 204645, 1999 WL 33453383, *1 (Mich. Ct. App. Mar. 23, 1999) ("During the execution of the warrant, defendant attempted to flee. When caught by an officer, defendant struggled. He managed to disarm the officer and shoot the officer before being shot himself.").

The district court noted that a police officer "is going to fiercely resist any effort" to seize the weapon. The court said further that "[t]his creates a scenario rife with opportunity for injury and death to people involved and anyone around, which makes the potential for violence an inherent aspect of the offense." We agree.

The Tenth Circuit, examining a statute governing jail escapes, said that

> every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so . . . . A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a

serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994) (internal citations omitted). Similarly, in the typical case, a person attempting to disarm an officer is fueled by adrenaline rather than reason and may act with further violence when the officer steps up his effort to maintain control of the situation and his firearm.

Analogous holdings of this and our sister circuits support a finding that the offense of attempting to disarm a police officer qualifies as a crime of violence. In *United States v. Payne*, 163 F.3d 371 (6th Cir. 1998), we held that the offense of larceny from the person, Mich. Comp. Laws § 750.357, was a crime of violence. We concluded that because the offense required the property be taken from the possession of the victim or from within the immediate presence or area of control of the victim, larceny from the person "clearly [presented] the type of situation that could result in violence." *Payne*, 163 F.3d at 375. We stated,

> Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence. Whether or not violence or harm actually results in any given instance is not relevant. We agree with the First Circuit that "although larceny from the person 'typically involves no threat of violence,' the risk of ensuing struggle is omnipresent."

*Id.* (citing *United States v. De Jesus*, 984 F.2d 21, 24 (1st Cir. 1993)).

Defendant argues that, because officers are trained to handle dangerous situations, the offense of disarming an officer is less dangerous than larceny from the person. We emphatically disagree and note that attempted disarming situations are in fact *more* fraught with danger because they

always involve inherently dangerous instrumentalities. Further, the typical motive of a person who attempts to disarm a police officer is markedly different from the likely motive of a person who commits larceny from the person. The perpetrator who tries to gain possession of an officer's gun is not ordinarily a mere thief, trying to make off with the firearm, but more often is trying to gain a tactical advantage over the officer in a confrontational situation. The potential risk of physical injury is plainly greater than a larceny from the person scenario.

In another analogous case, the First Circuit held that assault and battery upon a police officer, even the non-violent variety as proscribed by Massachusetts law, constituted a crime of violence. *See United States v. Fernandez*, 121 F.3d 777 (1st Cir. 1997). The court stated:

> It would seem self-evident that assault and battery upon a police officer usually involves force against another, and so meets that standard. At a minimum, assault and battery upon a police officer requires purposeful and unwelcomed contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties. While it is true that neither violence, nor the use of force, is an essential element of the crime as statutorily defined, still, violence, the use of force, and a serious risk of physical harm are all likely to accompany an assault and battery upon a police officer.

*Id.* at 780. The court noted that the offense nearly always involves the intentional striking of an on-duty officer and thus "nearly always poses a serious risk of actual or potential physical force and the likelihood of physical injury--to the police officer initially, and to the perpetrator (and even the public) subsequently, when the officer reacts or attempts to subdue the offender." *Id.*

The reasoning of *United States v. Kaplansky*, 42 F.3d 320 (6th Cir. 1994), further supports our finding that an attempt to disarm an officer is a crime of violence. In *Kaplansky*, we held that even kidnaping by deception constituted a crime of violence, in part because the victim might realize what was happening and resist. *Id.* at 324. Similarly, even if a suspect merely takes a firearm from an officer's constructive possession without contact (i.e., not from the officer's physical person), the officer may notice such threatening behavior and respond with force. Although it is true that the elements of the offense do not *require* physical violence or force, as a practical matter force and a consequential serious risk of physical injury is typically likely to accompany such an offense.

We also reject Defendant's argument that an *attempt* to disarm a police officer involves a less serious potential risk of injury than a *completed* crime of the same. Once a person endeavors to take an officer's firearm without consent while that officer is performing his or her duties, any risk of injury that arises remains present whether the assailant is successful in obtaining the gun or not. We understand that if the person does succeed in gaining possession of the officer's gun, especially in the presence of the officer or directly from the person of the officer, there is a greater likelihood that the *risk* of harm will materialize in *actual* harm. Moreover, we understand that the officer would be placed in greater danger because he would be more vulnerable without his firearm. These facts are nonetheless irrelevant to the court's inquiry because a significant risk of such injury still exists even during an uncompleted attempt to commit the offense. *See United States v. Roberts*, 59 Fed.Appx. 86, No. 01-5230, 2003 WL 343237, *4 (6th Cir. Feb. 12, 2003) ("First, we note that § 4B1.2(a)(2), on its face, requires that the seriousness must reside in the risk, and not necessarily in the injury."). We believe that, more often than not, attempts to disarm officers do not materialize into completed offenses because officers generally respond with some level of force (sometimes lethal) to repel their assailants. We reject the suggestion that the

likelihood of physical injury meaningfully diminishes (i.e., enough to conclude that a "serious" potential risk no longer exists) when a person merely attempts to disarm an officer but fails to complete the task. The commentary to the Guidelines supports such a view. It states that crimes of violence "include the offenses of aiding and abetting, conspiring, and *attempting to commit such offenses.* U.S.S.G. 4B1.2 (application note 1) (emphasis added).

Accordingly, we agree with the district court's determination that the offense as set forth in the disarming statute inherently involves a serious potential risk of physical injury, that it therefore constitutes a "crime of violence" under U.S.S.G. § 4B1.2 and that Defendant is a career offender.

The district court made clear in its holding that Defendant's felonious assault conviction coupled with his attempt to disarm an officer conviction was sufficient to satisfy the career offender requirements in the guidelines. It was only "for the sake of completeness" that the district court analyzed the resisting and obstructing conviction under Michigan Compiled Laws § 750.479(a). We need not reach the issue of whether this additional predicate crime also constitutes a crime of violence. We choose to avoid the question because, given the findings we have already made, any possible disagreement with the district court's conclusion on this point would be of no consequence.

## B. Due Process

Defendant finally argues that "there are Due Process concerns" with his sentence because, if affirmed, it retroactively expands the punishment that he faces without notice prior to his plea. Further, he claims he would have sought a more favorable plea (e.g., the negotiation of a statutory cap) if he had known he faced such a severe sentence. We review this constitutional challenge de novo. *See United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir. 1993).

In this case, there are no due process implications for Defendant's guilty plea or eventual sentence. At the time he entered his plea, Defendant acknowledged that he understood the statutory maximum sentence and knew that the court would use the Guidelines to make the final sentencing determination. Moreover, the plea agreement states, "The defendant understands that, based on his criminal record, he may qualify as a 'Career Offender' under § 4B1.1 of the Guidelines and receive a higher sentence under the Guidelines than if he did not have the same criminal record." It is apparent from the signed plea agreement that Defendant's plea was knowingly and intelligently offered. The notice in the agreement gave Defendant "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also United States v. Spires*, 946 F.2d 896, No. 90-1864, 1991 WL 211281, *2 (6th Cir. Oct. 21, 1991) ("As long as a defendant knows, before he enters his plea, the maximum sentence he can receive, due process does not require the court to inform the defendant of the specific sentencing guideline range that will be applied.").

Further, Defendant was not denied due process at sentencing because the district court provided him with reasonable notice that it was considering the enhancement and provided Defendant with an opportunity to be heard on the issue. *Oyler v. Boles*, 368 U.S. 448, 452 (1962). Defendant received the presentence report, recommending that he be sentenced as a career offender, almost six weeks prior to his sentencing hearing and he was able to fully litigate the issue at his hearing. *See United States v. Wilhite*, 929 F.2d 702, No. 90-5931, 1991 WL 46512, *1 (6th Cir. Apr. 4, 1991) ("Concerns for due process do not require that a criminal defendant be placed on advance notice of the application of a career offender sentence under guideline 4B1.1, so long as the defendant has, as he was in the instant case, been afforded an adequate opportunity to challenge the factual basis for applying the enhancement.").

**CONCLUSION**

Defendant's prior conviction for attempting to disarm a police officer, Michigan Compiled Laws § 750.479b(2), constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(2). Defendant's constitutional rights were not violated when he was classified as a career offender. The judgment of the district court is AFFIRMED.