RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0384p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 06-6002

*v.*

SAMSON PRUITT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 05-00061—J. Ronnie Greer, District Judge.

Argued: June 5, 2008

Decided and Filed: October 21, 2008

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Sandra B. Jelovsek, Johnson City, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Sandra B. Jelovsek, Johnson City, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, Robert M. Reeves, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

ROGERS, J., delivered the opinion of the court, in which MOORE, J., joined. MERRITT, J. (pp. 10-14), delivered a separate dissenting opinion.

_____

## OPINION

_____

ROGERS, Circuit Judge. In determining whether to apply the career offender provision of the United States Sentencing Guidelines, must the federal court take into account the defendant's state criminal history (or lack thereof) at the time of his predicate North Carolina convictions? The answer is yes, given the particular characteristics of North Carolina sentencing law, in light of recent United States Supreme Court precedent.

After pleading guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1), defendant Samson Pruitt was sentenced to 262 months' imprisonment. During sentencing, the district court determined that Pruitt qualified as a career offender under the United

States Sentencing Guidelines on the basis of two prior drug convictions that Pruitt had sustained in North Carolina, and for which Pruitt was sentenced to imprisonment for less than one year.

For a prior conviction to qualify as a predicate under the career offender guideline, U.S.S.G. § 4B1.1, the offense of conviction must have been "punishable by death or imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2 cmt. n.1. Under North Carolina's structured felony sentencing scheme, the maximum punishment authorized for Pruitt's prior offenses of conviction depended on Pruitt's state law "prior record level" at the time of each conviction. *See* N.C. Gen. St. § 15A-1340.17(c)-(d). In determining whether Pruitt's prior convictions qualified as predicates, the district court did not consider Pruitt's prior record level, but rather considered the maximum sentence allowable for a hypothetical defendant with the worst prior record level. Because this was procedural error, Pruitt's sentence must be vacated and his case remanded for resentencing.

## I.

On June 23, 2005, federal and state agents, acting on information received from various sources, executed a search warrant at Pruitt's home. Upon entering the residence, officers found a large indoor marijuana growing operation. The search also yielded three firearms located in an upstairs closet and over 1,400 rounds of ammunition. After the officers read Pruitt his *Miranda* rights, Pruitt admitted that he had previously been convicted of felony marijuana charges, that he owned the marijuana operation, and that he was a regular user of marijuana and cocaine.

On July 1, 2005, Pruitt signed a written plea agreement and an agreed factual basis in which he admitted to growing an amount of marijuana in excess of 100 plants and to possessing the three firearms found in his home. Under the plea agreement, Pruitt agreed to plead guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and to one count of manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1). Pruitt later pled guilty to both counts in open court on July 11, 2005. Prior to entry of Pruitt's guilty plea, the government filed in open court, pursuant to 21 U.S.C. § 851(a), an information giving notice of its intent to seek an increased punishment under 21 U.S.C. § 841(b)(1)(B), on the basis that Pruitt had previously been convicted of felony drug offenses.

The probation department prepared a presentence report detailing Pruitt's exposure under the sentencing guidelines. With respect to the § 922(g) count, the report calculated a base offense level of 24 because Pruitt had two prior felony controlled substance convictions. This base offense level was increased by two levels because Pruitt possessed three firearms, resulting in an offense level of 26. With respect to the § 841(a)(1) count, the presentence report calculated an offense level of 16. Under the guidelines grouping rules, this yielded a total combined offense level of 26. However, because Pruitt had previously been convicted of two prior felony controlled substance offenses in North Carolina, the presentence report concluded that Pruitt was a career offender under U.S.S.G. § 4B1.1. As a result, Pruitt's offense level was adjusted upward to 37. With a three-level downward adjustment for acceptance of responsibility, the report settled on an offense level of 34. Due to his status as a career offender, Pruitt's criminal history category was calculated to be VI. With the offense level of 34, this yielded an advisory guidelines range of 262-327 months' imprisonment.

After receiving the presentence report, Pruitt filed an objection to its career offender determination. Pruitt asserted that the prior convictions relied upon in the report did not qualify as predicates under § 4B1.1 because those convictions were not for offenses "punishable" by a term of imprisonment exceeding one year. On July 10, 2006, the district court entered a written order overruling Pruitt's objection and concluding that the relevant prior offenses of conviction were qualifying predicates. The district court reasoned that the relevant North Carolina sentencing statute authorized a sentence of up to 15 months' imprisonment for Pruitt's prior offenses of conviction,

and that Pruitt's particular prior record level at the time of each conviction was irrelevant to the analysis.

On July 17, 2006, the district court held a sentencing hearing. After accepting the advisory guidelines calculations in the presentence report, including the application of the career offender enhancement, the court sentenced Pruitt to a total term of 262 months' imprisonment—120 months for the § 922(g) count and 262 months for the § 841(a) count, to run concurrently.

## II.

Because the district court did not account for Pruitt's prior record level under North Carolina law in determining whether Pruitt's two prior North Carolina convictions were "punishable by . . . imprisonment for a term exceeding one year," Pruitt's sentence must be vacated and remanded. In the context of North Carolina's structured sentencing scheme, an offense of conviction is "punishable" for a term exceeding one year only if the state court could have sentenced a hypothetical defendant with the same prior record level as the defendant's prior record level to a term exceeding one year.

Under U.S.S.G. § 4B1.1, a defendant qualifies as a career offender if, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." § 4B1.1(a). In turn, § 4B1.2 defines "prior felony conviction" to mean

> a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.

§ 4B1.2 cmt. n.1. The district court deemed Pruitt a career offender on the basis of two prior convictions that Pruitt sustained in North Carolina in 1998 and 2003. Both convictions were obtained pursuant to N.C. Gen. St. § 90-95(a)(1), which proscribes selling, manufacturing, delivering, or possessing with intent to sell, manufacture, or deliver, a controlled substance. Under § 90-95(b)(2), Pruitt's conduct with respect to both convictions was punishable as a Class I felony. Unlike many substantive criminal statutes, however, the relevant provisions of § 90-95 do not prescribe a statutory maximum punishment for the offense. Rather, the maximum punishment is determined by reference to the structured felony sentencing scheme set out in N.C. Gen. St. § 15A-1340.17.

Under § 15A-1340.17, unless otherwise provided in a statute prescribing a specific punishment, the statutory maximum sentence for any given felony offense is derived based on two factors: (1) the defendant's "prior record level" as calculated under state law; and (2) whether the aggravated, presumptive, or mitigated sentencing range applies. *See* § 15A-1340.17(c)-(d). The defendant's prior record level (I-VI) is generally determined by "calculating the sum of the points assigned to each of the [defendant's] prior convictions." N.C. Gen. St. § 15A-1340.14(a). A sentence outside the presumptive range is permissible if the court determines that an aggravated or mitigated sentence is justified in light of the facts and circumstances of the case. § 15A-1340.17(c)(3)-(4). At the time of Pruitt's two convictions, North Carolina law permitted judicial fact-finding of the aggravating factors necessary to impose an aggravated sentence. *See State v. Lucas*, 548 S.E.2d 712, 731 (N.C. 2001) (defining the statutory maximum for *Apprendi* purposes to include the aggravated sentencing range). In 2005, however, following *Blakely v. Washington*, 524 U.S. 296 (2004), the North Carolina Supreme Court held that such judicial fact-finding violated the Sixth Amendment to the United States Constitution. *State v. Allen*, 615 S.E.2d 256, 264-66 (N.C. 2005). Thus, after *Allen*, any aggravating factor used to impose a sentence beyond the presumptive range must be found by a jury beyond a reasonable doubt or admitted by the defendant. The relevant

sentencing statute was amended in 2005 to reflect *Allen*. *See* N.C. Gen. St. § 15A-1340.16(a)-(a1); S.L. 2005-145, § 1 (N.C. 2005).

The structure of the North Carolina scheme effectively tailors the statutory maximum punishment available to each individual defendant. For a Class I felony, a hypothetical defendant with the worst prior record level (VI) is subject to a maximum term of imprisonment of 15 months under the aggravated range. That same defendant is subject to a maximum sentence of 12 months' imprisonment under the presumptive range, and to a maximum sentence of 10 months under the mitigated range. Conversely, a hypothetical defendant with the lowest prior record level (I) is subject to a maximum term of imprisonment of 10 months under the aggravated range. That same defendant is subject to a maximum sentence of 8 months under the presumptive range, and to a maximum sentence of 5 months under the mitigated range. *See* § 15A-1340.17(c)-(d).

In sentencing Pruitt as a career offender, the district court determined that both of Pruitt's prior North Carolina convictions were "punishable" by a term of imprisonment exceeding one year because a hypothetical Class I felon with the worst prior record level could be sentenced to 15 months' imprisonment under the aggravated range. Pruitt contests this determination on appeal. He argues that his two prior North Carolina convictions do not qualify as predicates under the career offender guideline because, in light of his particular circumstances at the time of each conviction, he was not exposed to a sentence that exceeded one year of imprisonment. Pruitt bases this argument on three grounds, the third of which has merit. That is, the district court was required to consider Pruitt's prior record level at the time of his predicate convictions. Before reaching that ground, we dispose of Pruitt's first two contentions, which would require the district court to consider that Pruitt allegedly could not have been sentenced under the aggravated range in connection with his predicate convictions.

Pruitt's first contention is based on the fact that, for a Class I felony, a defendant may be sentenced to a term of imprisonment exceeding 12 months only if a sentence within the aggravated range is imposed. (Indeed, under the North Carolina scheme, a sentence exceeding one year is authorized for a Class I felony only if the defendant is subject to the aggravated sentencing range and has a prior record level of V or VI.) *See* § 15A-1340.17(c)-(d). Pruitt contends that, because aggravated sentences under the North Carolina scheme were precluded by the North Carolina Supreme Court in *State v. Allen*, his prior Class I felony convictions cannot possibly qualify as predicate convictions for purposes of § 4B1.1. But Pruitt's argument misreads *Allen*. It is true that, in *Allen*, the North Carolina Supreme Court held, following *Blakely*, that it is unconstitutional under the Sixth Amendment for a judge to find aggravating factors to enhance a sentence beyond the presumptive sentencing range. 615 S.E.2d at 264-66. However, the *Allen* decision did not altogether preclude the imposition of aggravated sentences in North Carolina. Pruitt's argument fails to account for the fact that judicial fact-finding is not the only means by which an aggravated sentence could be imposed. In fact, and as explicitly acknowledged in *Allen*, an aggravated sentence remains possible under North Carolina law in circumstances where either (1) the jury finds the aggravating factors beyond a reasonable doubt, or (2) the defendant admits to the aggravating factors. *See Allen*, 615 S.E.2d at 265 (noting that "under *Blakely* the judge may still sentence a defendant in the aggravated range based upon the defendant's admission to an aggravating factor"); *see also* § 15A-1340.16(a)-(a1) (amended/added by S.L. 2005-145 to provide that a jury must find aggravating factors beyond a reasonable doubt unless the defendant admits to such factors). It is only where judicial fact-finding leads to an aggravated sentence that *Allen* (and now § 15A-1340.16) precludes such sentences.

Second, Pruitt argues that, in any event, there were no aggravating factors present with respect to his prior convictions. Accordingly, Pruitt contends that he could not have received a sentence within the aggravated range. But whether Pruitt was actually sentenced to the aggravated range or could have been sentenced to the aggravated range is not pertinent to the determination of

whether his prior convictions were "punishable" by a term exceeding one year. Under North Carolina law, Pruitt could have faced the aggravating factors necessary to impose a sentence within the aggravated range. Consequently, under that regime, the presumptive sentencing range served as the functional equivalent of a "guidelines range," above which the sentencing judge could depart under certain circumstances. Any such upward adjustment, however, could not exceed the maximum sentence authorized by the aggravated range. In effect then, the top of the aggravated range, and not the presumptive range, served as the "statutory maximum" for Pruitt's prior convictions, irrespective of whether an aggravated sentence was imposed in Pruitt's case. This conclusion is consistent with the Tenth Circuit's holding in *United States v. Norris*, 319 F.3d 1278, 1281-82 (10th Cir. 2003), that the possibility of an upward departure under Kansas's sentencing scheme rendered a conviction punishable for more than one year for purposes of a 18 U.S.C. § 922(g) conviction, even though the defendant's maximum presumptive sentence had been less than one year and no upward departure had been imposed.

Our conclusion above finds additional support in an analogous case in which the Supreme Court distinguished a state guidelines scheme from a state recidivism enhancement. In *United States v. Rodriquez*, 128 S. Ct. 1783 (2008), the Supreme Court addressed the question of whether a statutory recidivism enhancement should be accounted for in determining, under the Armed Career Criminal Act (ACCA), the "maximum term of imprisonment . . . prescribed by law" for a prior offense of conviction. *Id.* at 1786-87. Although *Rodriquez* involved the ACCA rather than the career offender guideline, its analysis is nonetheless persuasive in this case. Under the ACCA, a prior conviction qualifies as a "serious drug offense" if "'a maximum term of imprisonment of ten years or more is prescribed by law' for the 'offense.'" *Id.* at 1786 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)). At the time of the defendant's prior convictions, the relevant criminal statute prescribed a statutory maximum of five years' imprisonment, but a second statutory provision provided for a recidivism enhancement that doubled the statutory maximum to ten years for a second or subsequent offense. *Id.* at 1786-87. In addition to the prescription of those maximum punishments in the relevant criminal statutes, Washington's sentencing scheme featured a mandatory guidelines system under which a standard sentencing range was calculated. *Id.* at 1792. At the time of the defendant's prior convictions, the sentencing judge had authority to "'impose a sentence outside the standard sentence range' upon a finding 'that there [were] substantial and compelling reasons justifying an exceptional sentence.'" *Id.* (quoting Wash. Rev. Code § 9.94A.120(2) (1994)). The Supreme Court ultimately held that the recidivism statutory provision could be accounted for in determining the maximum term of imprisonment authorized for the offense. But the Court rejected the defendant's contention that the top of the standard sentencing guideline range should instead be considered the "maximum term" of imprisonment. *Id.* After noting that the Washington scheme in operation at the time of the defendant's prior convictions allowed the sentencing judge to adjust a sentence above the standard sentencing range up to the maximum sentence authorized by the relevant criminal statutes, the Court concluded that the concept of "maximum" term of imprisonment is better understood as referring to "the maximum term prescribed by the relevant criminal statute, not the top of a sentencing guideline range." *Id.*

Though the criminal statute at issue in this case does not itself prescribe a statutory maximum term of imprisonment, *Rodriquez* remains instructive. Under North Carolina law, Pruitt faced a possible sentence above the presumptive range if aggravating factors were found. Still, any upward adjustment could not exceed the top of the aggravated range. Thus, the presumptive range in the North Carolina scheme that Pruitt faced was analogous to the standard sentencing guideline range described in *Rodriquez*. And the maximum aggravated sentence under the North Carolina scheme served as the "statutory maximum" because the judge could not impose a sentence above that maximum.

Pruitt's third and final argument, however, has merit. The district court erred in failing to account for Pruitt's prior record level at the time of his predicate convictions in determining whether

those convictions qualified as predicates under § 4B1.1. As discussed, the maximum sentence authorized for a Class I felony depends on the prior record level of each defendant. A defendant who has a prior record of less than V cannot be sentenced to a term of imprisonment exceeding one year, regardless of whether he or she is sentenced in the aggravated, presumptive, or mitigated sentencing range. The use of a defendant's prior record level in the determination of a maximum sentence reflects a clear legislative judgment to vary a defendant's sentencing exposure based on criminal history. And unlike the imposition of an aggravated sentence, the determination of Pruitt's prior record level was not a matter left to the wide discretion of the sentencing judge.[1] Thus, under the North Carolina scheme, a defendant's criminal history has a significant effect on the maximum sentence authorized, and it was error for the district court not to consider Pruitt's prior record level in determining whether Pruitt's convictions were for an offense "punishable" by a term of imprisonment exceeding one year.

*Rodriquez* provides persuasive authority in this regard. In holding that the recidivism statutory provision could be accounted for in determining the maximum term of imprisonment authorized for the offense, the Supreme Court clearly indicated that consideration of that enhancement was proper only in circumstances where the particular defendant actually faced the possibility of the enhancement. *Rodriquez*, 128 S. Ct. at 1791. In Part III.C. of the opinion, the Court addressed the defendant's contention that making such a determination in every case would be difficult. The Court dismissed the defendant's contention as "greatly exaggerate[d]" for a number of reasons, and concluded its discussion with an observation that "in those cases in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense." *Id.* The Court's observation clearly conveys its understanding that the recidivism enhancement can be accounted for in determining the "maximum term of imprisonment" under the ACCA only if the particular defendant was subject to the enhancement. Indeed, although Rodriquez had been convicted under the same Washington statute three times, the government appeared to argue only that the latter two convictions should count for ACCA purposes. *See id.* at 1787 ("The Government also argued that at least two of respondent's Washington drug convictions were for 'serious drug offense[s].'"). The government's argument and the Court's analysis therefore accepted that Rodriquez's first conviction under the same Washington statute was not a qualifying offense because, given Rodriquez's criminal history, the first conviction was punishable by only five years in prison.

There is no reasonable basis on which to distinguish the North Carolina scheme's consideration of a defendant's prior record level and the recidivism enhancement provision at issue in *Rodriquez*. Under each, the prior criminal record of the defendant operates to increase the defendant's sentencing exposure, reflecting a legislative judgment to authorize harsher criminal penalties for persons who have previously engaged in criminal activity. In *Rodriquez*, the Court made clear that two of the defendant's prior Washington convictions carried a maximum sentence of ten years because the defendant himself was subject to the recidivism enhancement. In Pruitt's case, the relevant substantive criminal statute does not itself prescribe a maximum punishment. Instead, the maximum punishment is derived under the North Carolina structured scheme. Under

---

[1] As noted above, a defendant's prior record level is generally determined by "calculating the sum of the points assigned to each of the [defendant's] prior convictions." § 15A-1340.14(a). Prior to the 2005 amendments to the North Carolina sentencing scheme, a sentencing judge could, under limited circumstances, assess prior record level points based on its own findings of facts other than the fact of prior conviction. Points could be assessed if the offense was committed while the defendant was (1) on probation, parole, or post-release supervision, or (2) serving a sentence of imprisonment or on escape from a correctional institution. *See* § 15A-1340.14(b)(7). These circumstances involve facts closely related to the fact of prior conviction, and thus do not involve the sort of discretion associated with judicial fact-finding of aggravating factors. The 2005 amendments now require § 15A-1340.14(b)(7) facts to be found by a jury or admitted by the defendant. *See* § 15A-1340.16(a5).

that scheme, Pruitt's state prior record level dictates his sentencing exposure and, consequently, it must be considered in determining whether Pruitt's convictions were "punishable" for a term exceeding one year.

As expressed in *Rodriquez*, requiring the district court to consider a defendant's prior record level will not significantly burden sentencing proceedings. In some cases, the defendant's prior record level will be evident from the length of the sentence imposed. In others, the judgment of conviction or plea colloquy will list the prior record level. Finally, in those cases where the relevant records do not indicate the defendant's prior record level, "it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense." *Id.* at 1791.

Finally, we recognize that our decision here is in some tension with holdings of the Fourth Circuit. That circuit has held, in the context of the same North Carolina sentencing scheme, that "to determine whether a conviction is for a crime punishable by a prison term exceeding one year, . . . we consider the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *See United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005). *Harp*, however, was decided prior to *Rodriquez. But see United States v. Lemons*, 280 F. App'x 258 (4th Cir. 2008) (post-*Rodriquez* case relying on *Harp* with no discussion of *Rodriquez*). And because *Rodriquez* persuades us that it is necessary to consider the defendant's particular prior record level—and not merely the worst prior record level—in determining whether a conviction was for an offense "punishable" by a term exceeding one year for purposes of §§ 4B1.1 and 4B1.2, we conclude that the district court in this case committed procedural error in calculating Pruitt's sentencing guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007). We note that the district court's sentencing determination was obviously made without benefit of the later *Rodriquez* decision.

For the foregoing reasons, Pruitt's sentence must be vacated and remanded. The record is not sufficient for this court to determine whether, at the time of each of Pruitt's two North Carolina convictions, Pruitt's prior record level was high enough to warrant a sentence exceeding one year. Additionally, the record indicates that the two convictions at issue here may not be the only prior convictions that potentially qualify as predicate convictions under § 4B1.1. For example, Pruitt has conceded that a prior drug conviction in Georgia qualifies as a prior felony conviction for purposes of the 21 U.S.C. § 841(b)(1)(B) enhancement, and also for purposes of his 18 U.S.C. § 922(g)(1) conviction. It is possible that this conviction, or others listed in the presentence report, might qualify as a predicate conviction for purposes of § 4B1.1. The district court may give further consideration to these matters on remand.[2]

### III.

In his brief, Pruitt asserts additional arguments related to his sentence. Although we vacate Pruitt's sentence, we address two of those arguments to provide guidance to the district court on remand.[3] First, Pruitt argues that the government failed to comply with the notice procedures set out in 21 U.S.C. § 851(a). As a consequence of Pruitt's pleading guilty to 21 U.S.C. § 841(a)(1) and

---

[2]We also note that the presentence report assessed a base offense level of 26 for Pruitt's § 922(g) conviction by relying, in part, on the same two prior North Carolina convictions that it relied on in assessing the career offender enhancement. The relevant guideline for the § 922(g) conviction, U.S.S.G. § 2K2.1, defines "felony conviction" in terms almost identical to the definition of "prior felony conviction" in § 4B1.2. *See* § 2K2.1 cmt. n.1; §4B1.2 cmt. n.1. Thus, on remand, the analysis with respect to § 4B1.1 appears to apply with equal force to the determination of Pruitt's sentencing exposure under § 2K2.1.

[3]In addition to the arguments discussed here, Pruitt asserts other arguments related to the reasonableness of his sentence. In light of the remand, there is no reason to address those arguments.

admitting to growing an amount of marijuana in excess of 100 plants, the prior commission of a felony drug offense would raise Pruitt's statutory sentencing range under 21 U.S.C. § 841(b)(1)(B) from a range of 5-40 years to a range of 10 years to life. Under 21 U.S.C. § 851(a), such an increase cannot be imposed, however, unless the government, before entry of a plea of guilty or trial, has filed an information with the court stating in writing the previous convictions relied upon for the enhancement. This is significant to the career offender guideline analysis because, under § 4B1.1, the offense level is 37 for an offense that carries a statutory maximum of life, and 34 for an offense that carries a statutory maximum of 25 years or more. If the government did not properly comply with the notice procedures set out in § 851, Pruitt's offense level under the career offender guideline—if the district court again determines that that guideline is indeed applicable in Pruitt's case—would be 34 instead of 37. Pruitt contends that because he entered a plea of guilty at approximately 11 a.m. on July 11, 2005, and because the government did not "file" the information until 1:32 p.m. later that day, the government did not meet the requirements of § 851. This argument lacks merit.

The government tendered the § 851 information to the district court at the beginning of the rearraignment hearing, before Pruitt entered his guilty plea. Counsel for Pruitt acknowledged at the rearraignment hearing that she had previously received the § 851 information from the government, and stated that she had "not been able to provide that [information] to [Pruitt], but I will lay it in front of him at this moment and he can review that." Counsel also stated with respect to the information, "If I could object, I would, Your Honor, but I can't." Thereafter, Pruitt pled guilty to the 21 U.S.C. § 841(a)(1) offense. The clerk then docketed the § 851 information at 1:32 p.m.

As the government points out, this court and others have rejected arguments similar to Pruitt's. In *United States v. Butler*, 137 F. App'x 813, 815-16 (6th Cir. 2005), this court concluded in an unpublished decision that the requirements of § 851 were met where the government filed the information in open court prior to trial, but the clerk did not enter the information on the docket until after trial had begun. Because "both the transcript of the pre-trial conference and the certificate of service on the § 851 information" indicated that notice was served prior to trial, the fact that the information was entered on the docket after trial was "immaterial." *Id.* at 816; *see also United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir. 1990) (no § 851 violation where the information was docketed four days after trial commenced because the record indicated that counsel for defendant actually received the information before trial began). The transcript of the arraignment hearing in this case similarly indicates that Pruitt and his counsel received the information at the rearraignment hearing prior to his plea of guilty. Thus, Pruitt had "reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence," *see United States v. Pritchett*, 496 F.3d 537, 548 (6th Cir. 2007) (quoting *United States v. King*, 127 F.3d 483, 489 (6th Cir. 1997)), and it is immaterial that the clerk entered the information on the docket after Pruitt pled guilty. Because Pruitt received sufficient notice under 21 U.S.C. § 851(a), the district court is not precluded, on § 851 notice grounds, from applying an offense level of 37 under § 4B1.1 if it determines that the career offender enhancement applies.

Second, Pruitt contends that his due process rights were violated because he was not provided with sufficient notice that he was subject to the career offender enhancements under the sentencing guidelines. This argument is also unavailing. As part of his argument, Pruitt contends that due process requires that the notice requirements of 21 U.S.C. § 851 be extended to career offender enhancements under the sentencing guidelines. As argued by the government and acknowledged by Pruitt, however, that argument has previously been rejected in this circuit. *See United States v. Mans*, 999 F.2d 966, 969 (6th Cir. 1993). Moreover, in *United States v. Herrera*, 375 F.3d 399, 407 (6th Cir. 2004), this court rejected a due process argument similar to Pruitt's where the defendant had (1) been informed in the plea agreement that he may qualify as a career offender based on his criminal record, and (2) received, weeks prior to the sentencing hearing, the presentence report that recommended sentencing as a career offender. *See also United States v.*

*Wilhite*, No. 90-5931, 1991 WL 46512, at *1 (6th Cir. Apr. 4, 1991) ("Concerns for due process do not require that a criminal defendant be placed on advance notice of the application of a career offender sentence under guideline 4B1.1, so long as the defendant has, as he was in the instant case, been afforded an adequate opportunity to challenge the factual basis for applying the enhancement."). Here, the plea agreement informed Pruitt that "the sentencing determination will be based on the entire scope of the defendant's criminal conduct, defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553." Further, the presentence report expressly recommended that Pruitt be sentenced as a career offender, and Pruitt was afforded, and indeed will again be afforded, adequate opportunity to challenge that assessment in a sentencing proceeding. Pruitt has thus failed to establish any constitutional error in this regard, and the district court is not precluded, on due process grounds, from assessing the career offender enhancement.

## IV.

For the reasons stated in Part II, *supra*, we vacate Pruitt's sentence and remand for resentencing consistent with this opinion.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. The "career offender" designation in this case – turning the two minor and remote North Carolina convictions into "felonies" – would make a difference of approximately 15 years in Pruitt's sentence. I dissent not because I disagree that the district court erred in using the highest "prior record level" under North Carolina's sentencing scheme in finding that Pruitt was a "career offender," but because I would remand with clear instructions to the district court that Pruitt cannot be sentenced as a "career offender." We should not reopen the door to a "career offender" sentence for three separate reasons: (1) The North Carolina sentencing statute does not permit Pruitt to be punished for a felony; (2) United States Supreme Court sentencing case law prohibits a federal court from going outside a narrow set of facts to make a "career criminal" sentencing designation, and (3) The rule of lenity requires in this case the use of the federal sentencing date instead of the state sentencing date when calculating whether Pruitt is a "career criminal."

## I. The North Carolina Sentencing Statute and the Federal "Career Criminal" Designation

I can think of no legitimate argument based on the record — and neither the majority nor the government suggests such an argument — whereby the district court could on remand use Pruitt's prior convictions to now designate Pruitt as a career offender. The convoluted nature of the U.S. Sentencing Guidelines concerning the "career offender" designation, §§ 4B1.1 and 4B1.2, is such that in order to understand this case we must first understand the North Carolina sentencing law, §§ 15A-1340.14 through 15-1340.17. North Carolina's structured sentencing scheme employs a grid that resembles the federal Sentencing Guidelines, with the "class of offense" for state convictions comparable to the "offense level" under the federal system and the "Prior Record Level" comparable to the "criminal history category" for recidivist offenders. N.C. Gen. Stat. § 15A-1340.17. Each offense level has three categories: mitigated, presumptive and aggravated. N.C. Gen. Stat. § 15A-1340.17(c). Each category prescribes a sentencing range, depending upon under which "prior record level" the defendants falls. The following subsection in the statute dictates the "maximum statutory sentence" that may be imposed upon a defendant falling within a specific range. N.C. Gen. Stat. § 15A-1340.17(d) ("for each minimum term of imprisonment in the chart in subsection (c) of this section, expressed in months, the corresponding maximum term of imprisonment, also expressed in months, is as specified in the table below for Class F through Class I felonies. The first figure is the minimum term [from subsection (c)] and the second is the maximum term.")

The two minor offenses for which Pruitt was given short sentences in 1998 and 2003 are at the very bottom of the grid — offenses that fall within Class I, which follows after Classes A through H. Under that chart, the "presumptive" sentence for each offense is a misdemeanor. Under North Carolina's sentencing scheme, Pruitt's sentencing range in subsection (c) under the "presumptive" category for an offender with the highest "prior record level" is 8-10 months. Looking to subsection (d) for the "maximum sentence," we find that 12 months is the maximum term allowed for a Class I felony with a range from subsection (c) of 8-10 months. The only way to reach a 15-month maximum sentence for a Class I felony – and therefore to qualify the predicate convictions as felonies for purposes of applying the career offender enhancement in the federal Guidelines – is for the offender's sentencing range to be in the "aggravated" category under subsection (c). In order for either of Pruitt's North Carolina offenses to be classified as punishable for more than one year under the "career offender" provision of the U.S. Sentencing Guidelines, the North Carolina sentencing court would have to find as a fact a series of North Carolina "aggravators under § 1340.17, which the North Carolina court did not find at the time of sentencing and do not

exist in our record or any record in any federal or state court subject to judicial notice and use by us in this case. Because aggravators were not present in the two prior state convictions and it would be impermissible for a North Carolina state judge to find such aggravators were Pruitt sentenced for the same crimes today, it is contrary to law to find that an "aggravated" sentence should serve as the "maximum punishment authorized" for Pruitt's state convictions. *See Blakely v. Washington*, 542 U.S. 296 (2004).

At the time Pruitt was sentenced for the 1998 and 2003 convictions in North Carolina, the sentences could only have exceeded one year *if* the North Carolina sentencing judge had found that the state met its "burden of proving beyond a reasonable doubt that [certain] aggravating factor[s] exist, such as "(7) the offense was especially heinous . . ." or "(10) the defendant was armed . . ." as required by the preceding §1340.16. No one has ever suggested that any such aggravator is or was present and the government concedes that they were not. No such aggravator was charged by the state, as required by state law, or found by the state sentencing judge. So I do not see why we are remanding to the district court with an opinion and order that gives the district court open-ended authority to sentence Pruitt as a "career offender."

I do not agree that the maximum sentence for the entire offense class, that is, a sentence that requires a finding of aggravators *regardless* of whether such aggravating factors have been found by a jury to exist or admitted in the case of a particular defendant, can serve as the maximum allowable sentence for purposes of determining career offender status. That is what the majority opinion allows in this case. In the absence of a jury finding or a guilty plea, the highest possible statutory sentence under North Carolina law is the statutory maximum for the "presumptive" range, which provides for a maximum sentence of 12 months. *Blakely v. Washington*, 542 U.S. 296 (2004); *State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005). The North Carolina Supreme Court has held that the maximum possible sentence for an offender, like Pruitt, in the category of "no finding of aggravating circumstances" is the "presumptive" range with its absolute maximum sentence of 12 months.

The majority seems to rely on *United States v. Rodriquez*, 128 S. Ct. 1783 (2008), to find that the maximum sentence for a Class I felony under North Carolina law is the maximum allowed for the "aggravated," not "presumptive," range. As the Supreme Court explained, however, the "concept of the 'maximum' term of imprisonment or sentence prescribed by law . . . necessarily referred to the maximum term prescribed by the *relevant* statute . . . ." 128 S. Ct. at 1792 (emphasis added). The only "relevant" statute in this case involves the maximum sentence correlating to the top of the "presumptive" range for Class I felonies in North Carolina – 12 months. N.C. Gen. Stat. § 15A-1340.17(d).

To the extent it is relevant at all to this situation, *Rodriquez* supports Pruitt's argument that when the statute in question contains multiple "maximum" sentences depending on some categorization of the offender based on conduct, the sentencing court should look to the facts and circumstances of that conviction to determine which maximum sentence applies for purposes of the career offender enhancement. *Rodriquez* held only that the applicable maximum sentence for purposes of federal sentencing is that prescribed by the underlying criminal statute, as opposed to the sentence the defendant actually received or the top of the specified guidelines range, as Rodriquez argued.

The Court did not hold that there can be only one applicable "maximum" sentence for the offense class and it must be the highest level possible for any defendant. *Rodriquez* directs the federal sentencing court to look to the underlying state statute. If the statute prescribes more than one maximum sentence for different categories of defendants, the court should look to the appropriate factors surrounding the individual defendant's prior convictions to determine if the convictions qualify for purposes of enhancing the federal sentence – just as the majority argues

should be done to determine Pruitt's prior record level under North Carolina law. Nothing in *Rodriquez* allows the federal sentencing court to look beyond the known facts in the record of the particular defendant's prior conviction to enhance it so as to allow a higher "maximum sentence" to be used for career offender purposes. Here, the government concedes that Pruitt falls within the "No Aggravating Factors" category within the Class I felony statute. Further support for this reading of *Rodriquez* as it applies to the career offender enhancement is found in an Application Note to U.S.S.G. § 4B1.2, the definition section for the terms used in § 4B1.1. The Note explains that in determining whether an offense is a crime of violence or a controlled substance for the purposes of § 4B1.1, the "conduct of which the defendant was convicted" is the focus of the inquiry. U.S.S.G. § 4B1.2 cmmt. n2.

In any event, *Rodriquez* did not directly address the issue in this case – whether an aggravated or non-aggravated sentence should serve as the statutory maximum sentence under a multi-tier scheme based on conduct, such as North Carolina's. *Rodriquez* did not raise the Sixth Amendment issue of whether an aggravated sentence can serve as the statutory maximum when no aggravators were present at the time of sentencing and where the state sentencing court would be prohibited from finding such aggravators today under *Blakely* and *Allen*. *Rodriquez* does not alter the conclusion that the maximum possible sentence under North Carolina law to which a Class I offender in the category of "no finding of aggravating circumstances" is the statutory maximum for the presumptive range.

The highest maximum sentence to which Pruitt was subject as a Class I felony offender with no finding of aggravating circumstances was exactly 12 months , *even if* it could be determined that he should be placed in the highest "prior record level" category (Level VI). Therefore, the only way that Pruitt can be found to be a "career offender" is if the district court finds that his prior record level under North Carolina law is at the maximum level of VI *and* if the dispositions of his Class I offenses fall within the "aggravated" range instead of the "presumptive" range of North Carolina's three-tier system for categorizing offenses within each class. Because I see no basis for allowing the "aggravated" maximum sentence to be used in this case instead of the maximum sentence under the "presumptive" range with no aggravators, I see no reason to direct the district court to engage in the unknowable task of determining Pruitt's "prior record level" under North Carolina law.

Based on the fact that there is no basis to find that Pruitt's maximum sentence could have exceeded 12 months regardless of his prior record level, I find a remand unnecessary. Under no circumstances present in this case should the district court be allowed to use the "aggravated" range to determine Pruitt's prior sentences under North Carolina law. If the district court is confined to finding that the maximum allowable sentence Pruitt could have received for his prior Class I offenses fall within the "presumptive" range, there is no way that Pruitt's prior sentences could have exceeded one year and the possibility of sentencing him in federal court as a "career offender" becomes impossible.

## II. Supreme Court Case Law Prevents Going Outside the Record

Although I do not believe we need to even address Pruitt's prior record level because he should be exposed to no sentence exceeding 12 months regardless of his prior record level, I agree that the district court erred in assuming the worst possible prior record level for Pruitt under North Carolina's recidivist statute instead of making an individualized finding as to Pruitt based on his record under North Carolina law. However, looking back today, I see no way to determine Pruitt's "prior record level" with any accuracy. The determination would require the district court to find unknowable factual answers to unknowable questions. We do not even know what facts, if any, the North Carolina judges used years ago to calculate the "prior record level," or whether such a calculation was made, or who made the calculations, if anyone, or how one would now go about reconstructing whatever it is that would have constituted Pruitt's unknown "prior record level." And

to make matters worse, Supreme Court case law forbids federal district courts in "career offender" cases from calculating a state law sentence based on facts outside the record. Federal district courts may "look only to the fact of conviction and the statutory definition of the prior offense," and they may not "determine what the conduct was or try to reconstruct facts" that would determine the "prior record level." *Taylor v. United States*, 495 U.S. 575, 601-02 (1990). Federal courts "must avoid subsequent evidentiary enquiries into the factual basis for the earlier conviction," and they may not resolve "disputed findings of fact about what the defendant and the state judge understood as the factual basis of the prior plea." *Shepard v. United States*, 544 U.S. 13, 20, 25 (2005).

### III.  The Rule of Lenity Applied to This Case

Even if somehow the state judge sentencing Pruitt in 1983 or 2003 could have found some aggravators that could have converted his sentence from the "presumptive" to the "aggravated" range, we should be foreclosed from doing that now under *Allen* and North Carolina statutory amendments implementing *Allen* that prohibit any such finding of an aggravator not found by a jury or admitted by defendant. The U.S. Sentencing Guidelines do not specify a date on which the district court should rely to find whether prior state convictions qualify for federal enhancements like the career offender enhancement.

Moreover, we have no basis to assume the state conviction date, instead of the federal "career offender" sentencing date, is the appropriate date for determining whether the state law "penalty" is a "felony" for "career offender" purposes or a misdemeanor. With such confusion as to how a federal court would go about establishing Pruitt's "prior record level" under North Carolina law for the purposes of the federal career offender guideline, we cannot direct or guide the district court. It is clear that in the construction of penal laws where there is an ambiguity as to the nature of the penalty to be used to calculate such things as "career offender" status, the common-law-inspired rule of lenity should be applied. And for "career criminal" purposes, the federal sentencing judge should use the penalty at the lesser end of the ambiguity scale rather than the greater. The rule of lenity was correctly applied by our court in the "career criminal" context in *United States v. Morton*, 17 F.3d 911 (6th Cir. 1994), by Judge Kennedy for a unanimous panel. Judge Kennedy pointed out that "if the defendant were sentenced today he could not be" classified as a career criminal. Both the former state penalty law and the federal law were "ambiguous." "The question is at least ambiguous," she held, and "therefore, under the rule of lenity, should be resolved in defendant's favor." She then quoted from *United States v. Bass*, 404 U.S. 336, 348 (1971): "Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *See also* Justice Scalia's detailed discussion of the rule of lenity as a principle of the construction of penal statutes in *United States v. Santos*, 128 S. Ct. 2020, 2025-30 (2008) ("Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); *United States v. Rodriquez*, 128 S. Ct. 1783, 1800 (2008) (Souter, J., dissenting), for Justice Souter's extensive discussion applying the rule of lenity to the severity of criminal sentencing under the sentencing guidelines; Reed Dickerson, *The Interpretation and Application of Statutes* 208-12 (1975); L. Hall, *Strict or Liberal Construction of Penal Statutes*, 48 Harv. L. Rev. 748 ((1935).

My colleagues' opinion is a purely formalistic, legalistic document. It advances no sentencing purpose, calls on no principle or policy of sentencing, never mentions rehabilitation, deterrence, "no greater punishment than necessary" (a version of the rule of lenity), or any other guidepost set out by Congress in 18 U.S.C. § 3553. For two minor and remote marijuana convictions Pruitt may receive the "career criminal" designation and a disproportionate sentence comparable to the sentence he would receive if his two prior convictions were instead for rape or robbery. The defendant here is not an abstraction or a legalistic category. He is a real-life person addicted to drugs, guilty of growing marijuana plants at his house – where he also had three firearms like the "Arms" the Supreme Court recently held "the people have the right to keep and bear" under

the Second Amendment.  For this terrible crime, and his other two prior minor offenses, we are sending the case back for another sentencing hearing for the district court to make an unknowable calculation based on facts outside the record of this or any record we can judicially notice.  Even if such a calculation could be made, the Supreme Court has told us we may not go so far afield.