ON REHEARING EN BANC

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

   v.

JASON EDWARD SIMMONS,

    *Defendant-Appellant.*

---

NORTH CAROLINA ADVOCATES FOR
JUSTICE; FEDERAL DEFENDERS OF
WESTERN NORTH CAROLINA,
INCORPORATED; OFFICE OF THE
FEDERAL PUBLIC DEFENDER, for the
Middle District of North Carolina;
OFFICE OF THE FEDERAL PUBLIC
DEFENDER, for the Eastern District
of North Carolina,

  *Amici Supporting Appellant.*

No. 08-4475

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(1:07-cr-00077-LHT-1)

Argued: May 11, 2011

Decided: August 17, 2011

Before TRAXLER, Chief Judge, and WILKINSON, NIEMEYER, MOTZ, KING, GREGORY, SHEDD, DUNCAN, AGEE, DAVIS, KEENAN, WYNN, and DIAZ, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judges King, Gregory, Shedd, Davis, Keenan, Wynn, and Diaz joined. Judge Duncan wrote a dissenting opinion. Judge Agee also wrote a dissenting opinion, in which Chief Judge Traxler and Judges Wilkinson, Niemeyer, and Duncan joined.

---

## COUNSEL

**ARGUED:** Andrew Brady Banzhoff, DEVEREUX & BANZHOFF, Asheville, North Carolina, for Appellant. Matthew Segal, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Amici Supporting Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Adam Morris, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. Christopher C. Fialko, RUDOLF WIDENHOUSE & FIALKO, Charlotte, North Carolina, for North Carolina Advocates for Justice, Amicus Supporting Appellant. Claire J. Rauscher, Executive Director, Ann L. Hester, Assistant Federal Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Federal Defenders of Western North Carolina, Incorporated, Office of the Federal Public Defender, for the Middle District of North Carolina, and Office of the Federal Public Defender, for the Eastern District of North Carolina, Amici Supporting Appellant.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

After Jason Simmons pled guilty to federal drug trafficking, the district court held that his prior state conviction for marijuana possession, for which he faced no possibility of imprisonment, was for an offense "punishable by imprisonment for more than one year," triggering a sentencing enhancement under the Controlled Substances Act. This enhancement doubled Simmons's minimum sentence. We affirmed in an unpublished opinion. *See United States v. Simmons*, 340 F. App'x 141 (4th Cir. 2009). The Supreme Court vacated that judgment and remanded the case to us for "further consideration in light of *Carachuri-Rosendo v. Holder*," 130 S. Ct. 2577 (2010). A panel of this court then held that *Carachuri* did not require any change in our prior holding. *See United States v. Simmons*, 635 F.3d 140 (4th Cir. 2011). We voted to rehear the case *en banc*, and for the reasons that follow, we now vacate Simmons's sentence and remand for further proceedings consistent with this opinion.

I.

For first-time offenders who possess with intent to distribute at least 100 kilograms of marijuana, the Controlled Substances Act (CSA) mandates "a term of imprisonment" of at least five years. 21 U.S.C. § 841(b)(1)(B)(vii). But for offenders who engage in such conduct "after a prior conviction for a felony drug offense has become final," the CSA mandates a "term of imprisonment" of at least ten years. *Id.* A separate provision of the CSA defines a "felony drug offense" as a drug-related "offense that is punishable by imprisonment for more than one year under any law . . . of a State." *Id.* § 802(44).

On August 6, 2007, a federal grand jury returned an indictment charging Simmons with three counts of marijuana traf-

ficking under the CSA. The Government subsequently filed a Bill of Information, pursuant to 21 U.S.C. § 851, alleging that Simmons's 1996 North Carolina conviction for possession with intent to distribute marijuana constituted a predicate "felony drug" conviction triggering the ten-year statutory minimum sentence set forth in the CSA. Simmons pled guilty to the federal charges but contended that his prior North Carolina conviction could not serve as a predicate for an enhanced sentence. The district court rejected Simmons's objection to the enhancement and sentenced him to ten years' imprisonment.[1] Without the disputed sentencing enhancement, Simmons's Guidelines range would have been 63-78 months.

In an unpublished opinion, we affirmed Simmons's sentence, although we acknowledged that Simmons "could not have received a sentence in excess of twelve months" for his North Carolina conviction. *Simmons*, 340 F. App'x at 143. Subsequently, the Supreme Court vacated our judgment in this and a number of other cases, remanding the cases to us for reconsideration in light of *Carachuri*. *See United States v. Thompson*, No. 3:05-CR-294-2, 2010 WL 4236532, *3 (W.D.N.C. Oct. 21, 2010) (collecting cases). A panel of this Court concluded that *Carachuri* "does not implicate the analysis at issue in this case," 635 F.3d at 146-47, and so again affirmed the judgment of the district court. We then voted to vacate the panel opinion and rehear the case *en banc*.

---

[1]The district court imposed concurrent 120-month sentences for each of the three counts. Two of the three counts charged Simmons with possession with intent to distribute under 50 kilograms of marijuana, for which the CSA establishes statutory maximums of ten years for recidivist possession and five years for first-time possession. 21 U.S.C. § 841(b)(1)(D). Simmons thus received the statutory maximum for these two counts. The remaining count charged Simmons with conspiracy to distribute at least 100 kilograms of marijuana, which triggered the 10-year statutory minimum required by 21 U.S.C. § 841(b)(1)(B). Therefore, our holding that Simmons possesses no "prior conviction for a felony drug offense" fixes his maximum sentence for the two lesser counts at five years, and it reduces to five years the minimum sentence for the remaining count.

## II.

A proper analysis of Simmons's sentencing enhancement requires that we first place his prior North Carolina conviction in the context of the unique statutory regime mandated by the North Carolina Structured Sentencing Act ("the Act").

### A.

The Act creates felony sentences strictly contingent on two factors: the designated "class of offense" and the offender's "prior record level." N.C. Gen. Stat. § 15A-1340.13(b). Both factors are established by statute. The Act, or in some cases another state statute creating the offense of conviction, specifies the class of offense. *Id.* § 15A-1340.17(a). The Act mandates that the sentencing judge determine an offender's prior record level by adding together the point levels (which the Act assigns) of each of the offender's prior convictions. *Id.* § 15A-1340.14(a)-(b). The State bears the burden of proving the existence of these prior convictions. *Id.* § 15A-1340.14(f).

The Act then requires the sentencing judge to match the offense class and prior record level pursuant to a statutory table, which provides three possible sentencing ranges—a mitigated range, a presumptive range, and an aggravated range. *Id.* § 15A-1340.17(c). The presumptive range governs unless the judge makes written findings that identify specific factors, separately designated by the Act, that permit a departure to the aggravated or mitigated range. *Id.* §§ 15A-1340.13(e), 15A-1340.16(c). Moreover, the Act provides that a judge may select from the aggravated range *only* if the State has provided a defendant thirty-days' notice of its intent to prove the necessary aggravating factors, *id.* § 15A-1340.16(a6), and a jury has found beyond a reasonable doubt (or the defendant has pled to) the existence of those factors, *id.* §§ 15A-1340.16(a)-(a1).

Once the judge identifies the appropriate range, the Act provides that he must choose the defendant's minimum sentence from within that range.[2] *Id.* § 15A-1340.17(c). After the judge chooses a defendant's minimum sentence, a separate statutory chart then supplies the defendant's corresponding maximum sentence. *Id.* §§ 15A-1340.17(d), (e). The Act, unlike the Federal Sentencing Guidelines, prohibits a sentencing judge from imposing a maximum sentence higher than the one fixed by the statutory chart. *Id.* §§ 15A-1340.13(b), (c).

B.

North Carolina designates Simmons's predicate offense— possession with intent to sell no more than ten pounds of marijuana—as a Class I felony. *Id.* §§ 90-94, 90-95(b)(2); *cf. id.* § 90-95(h)(1). Under the Act, a Class I felony is punishable by a sentence exceeding twelve months' imprisonment *only* if the State satisfies two conditions. First, the State must prove (or the defendant must plead to) the existence of aggravating factors sufficient to warrant the imposition of an aggravated sentence. *Id.* § 15A-1340.16(a). Second, the State must demonstrate that the defendant possesses fourteen or more criminal history points, resulting in a "prior record level" of at least 5. *Id.* § 15A-1340.14(c)(5). If the State fails to satisfy either of these conditions, a Class I offender can *never* receive more than one year's imprisonment. *Id.* §§ 15A-1340.17(c)-(d).

The State satisfied neither condition in this case. First, the State did not provide Simmons notice of intent to prove any aggravating factors; this foreclosed the sentencing judge from imposing an aggravated sentence. Second, because as a first-time offender Simmons possessed a "prior record level" of

---

[2]In rare cases in which a judge finds the presence of "extraordinary mitigating factors," he may impose a lesser sentence. N.C. Gen. Stat. § 15A-1340.13(g). But a judge possesses no discretion to impose a more severe sentence even in extraordinary cases.

only 1, the Act established a minimum sentencing range of four-to-six months' community punishment (no imprisonment) and capped his maximum sentence at eight months' community punishment (again no imprisonment). *Id.* §§ 15A-1340.17(c)-(d); *id.* §§ 15A-1340.11(1)-(2). In compliance with these requirements, the state judge did not sentence Simmons to a single day of imprisonment, instead imposing only six-to-eight months' community punishment.

### III.

Nevertheless, the Government correctly notes that if *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), controls here, Simmons cannot prevail in challenging his sentence. In *Harp*, we held that "to determine whether a conviction is for a crime punishable by a prison term exceeding one year" under North Carolina law, "we consider the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *Id.* at 246 (emphasis omitted). In our original 2009 unpublished opinion resolving Simmons's appeal, we followed *Harp* and held that Simmons was convicted of an offense "punishable" by more than one year's imprisonment. The Supreme Court has vacated that judgment and ordered us to reconsider the case in light of its subsequent precedent. After consideration of that precedent, we now conclude that *Harp* no longer remains good law.

### A.

Last year, in *Carachuri*, the Supreme Court examined a provision of the Immigration and Nationality Act (INA) that allows an alien to seek cancellation of removal only if he "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). The statute further defines the term "aggravated felony" as including a "drug trafficking crime," *id.* § 1101(a)(43)(B), which another statute defines as including "any felony punishable under the Controlled Substances Act," 18 U.S.C. § 924(c)(2). A final statutory provision limits a

qualifying "felony" to "a crime for which the 'maximum term of imprisonment authorized' is 'more than one year.'" *Carachuri*, 130 S. Ct. at 2581 (quoting 18 U.S.C. § 3559(a)). Thus, at bottom the question presented was whether Carachuri had been "convicted of" a crime "punishable as a federal felony" under the CSA –- that is, a crime for which the "maximum term of imprisonment authorized" under the CSA exceeds one year. *Id.* at 2583.

In 2004, Carachuri had received a 20-day sentence for possessing less than two ounces of marijuana in violation of Texas law. *See id.* at 2583. In 2005, he received a 10-day sentence for possessing a Xanax tablet without a prescription, also in violation of Texas law. *Id.* at 2583. Although Texas law permitted an enhanced sentence for recidivist possession, Texas did not seek to use the 2004 conviction to enhance Carachuri's sentence for his 2005 conviction. *Id.* at 2583.

In contending that the 2005 Texas conviction nevertheless constituted a predicate "aggravated felony" conviction under the INA, the Government argued that if Carachuri had faced federal prosecution for the 2005 offense, he could have "received a 2-year sentence." *Id.* at 2582. This was so because federal law provides for a sentence of up to two years for drug possession, as long as the offender has a "prior conviction for any drug . . . offense chargeable under the law of any State." 21 U.S.C. § 844(a). Given Carachuri's prior 2004 conviction, he hypothetically could have received a two-year federal sentence for his 2005 Xanax offense. In view of this hypothetical, the Government argued that Carachuri's 2005 conviction was for an aggravated felony that was "punishable" by imprisonment for more than one year, even though he actually received a sentence of only ten days' imprisonment. *Carachuri*, 130 S. Ct. at 2587.

Although the Fifth Circuit had accepted this argument, *see Carachuri-Rosendo v. Holder*, 570 F.3d 263 (5th Cir. 2009), the Supreme Court unanimously rejected it. Focusing on the

INA's use of the phrase "*convicted* of a[n] aggravated felony," the Supreme Court reasoned that the "text thus indicates that we are to look to the conviction itself as our starting place." *Carachuri*, 130 S. Ct. at 2586. Turning to Carachuri's 2005 conviction, and noting that it contained "no finding of the fact of his prior drug offense," the Court held that Carachuri was "not actually convicted" of an offense punishable by a term of imprisonment exceeding one year. *Id.* at 2586-87 (internal quotation omitted).

In *Carachuri* the Government also contended, in an argument parallel to that pressed here, that the CSA provision under which Carachuri could have been punished created only one "offense," and that the existence of a prior conviction was merely a "predicate for an enhanced sentence, not an element of the offense." *Carachuri*, Respondent's Br. at 24. The Government thus argued that Carachuri's conviction was for an "offense"—drug possession—that was potentially "punishable" by an enhanced sentence, even though the CSA reserved enhanced sentences for recidivists.

The Supreme Court also specifically rejected this argument. It acknowledged that the statutory text of 21 U.S.C. § 844(a) did not "expressly define a separate offense of 'recidivist simple possession.'" *Carachuri*, 130 S. Ct. at 2581 n.3. But because "the fact of a prior conviction must still be found . . . before a defendant is subject to felony punishment," the Court viewed § 844(a) as containing a "felony simple possession provision" that is "separate and distinct from the misdemeanor simple possession offense." *Id.* Accordingly, the Court held that Carachuri had been convicted only of the "misdemeanor simple possession" offense, for which he could have received a maximum punishment of only one year.

Of course, *Carachuri* involved use of a predicate conviction for immigration purposes rather than for criminal sentencing. However, in *Carachuri* the Supreme Court stated that its "[l]inking" of the "inquiry to the record of conviction com-

ports with how [it] ha[d] categorized convictions" for criminal sentencing purposes. *Id.* at 2587 n.12.[3] As support for this statement, the Court cited *United States v. Rodriquez*, 553 U.S. 377 (2008). In *Rodriquez*, the Court permitted reliance on a recidivist enhancement for the purpose of determining whether a prior state conviction qualified as a predicate for a federal sentencing enhancement under the Armed Career Criminal Act (ACCA). *Id.* at 393. But the Court cautioned that when a judgment of conviction, charging document, or plea colloquy "do[es] not show that the defendant faced the possibility of a recidivist enhancement, it may well be that *the Government will be precluded from establishing that a conviction was for a qualifying offense*." *Id.* at 389 (emphasis added). In *Carachuri*, the Court went even further, explaining that in *Rodriquez* it had "*held* that a recidivist finding could set the 'maximum term of imprisonment,' *but only* when the finding is a part of the record of conviction." 130 S. Ct. at 2587 n.12 (emphasis added).

## B.

With the analysis established in *Carachuri* and *Rodriquez* in mind, we turn to the determination of whether Simmons's 1996 conviction was for an offense "punishable by imprisonment for a term exceeding one year" and so qualifies as a predicate felony conviction for purposes of the CSA.

---

[3]Thus, the *Carachuri* Court itself rejected the Government's suggestion in this case, adopted by Judge Duncan in dissent, that the *Carachuri* analysis applies only in the deportation context. Moreover, the ultimate question facing the Court in *Carachuri* was whether Carachuri's conduct was "punishable" as a felony under the CSA—the same statute that is at issue here. *See Carachuri*, 130 S. Ct. at 2582. That *Carachuri* analyzed the CSA in the "deportation context" renders its holding no less binding in the "criminal context," because, as the Supreme Court has explained, courts "must interpret the statute consistently" across both contexts. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

### 1.

"[T]he conviction itself" must serve as our "starting place." *Carachuri*, 130 S. Ct. at 2586. Examination of Simmons's 1996 state conviction demonstrates that he committed a Class I felony, but as a first-time offender possessed a prior record level of only 1, and thus could not have received a sentence exceeding eight months' community punishment. N.C. Gen. Stat. §§ 15A-1340.17(c)-(d).

Because the state sentencing court never made the recidivist finding necessary to expose Simmons to a higher sentence, *Carachuri* teaches that the Government cannot now rely on such a finding to "set the maximum term of imprisonment." *Carachuri*, 130 S. Ct. at 2587 n.12 (internal quotation marks omitted). Indeed, Simmons's conviction exemplifies the hypothetical to which the Supreme Court alluded in *Rodriquez*, *i.e.* a case "in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement." *Rodriquez*, 553 U.S. at 389. In such a situation, the Supreme Court has held that the Government is "precluded from establishing that a conviction was for a qualifying offense" on the basis of such a hypothetical enhancement. *Id.*; *see also Carachuri*, 130 S. Ct. at 2587 n.12 (characterizing this as a holding).

To be sure, in *Rodriquez* the Court also rejected the argument that "guidelines systems," which "typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range," serve to "decrease the 'maximum term' of imprisonment." 553 U.S. at 390. On the basis of this observation, the Government argues that *Rodriquez* forbids us from relying on the Structured Sentencing Act to "decrease the maximum term of imprisonment" Simmons could have served. But the Act does not establish a "guidelines system[ ]"; rather, it *mandates* specific sentences. *See State v. Norris*, 630 S.E.2d 915, 917-18 (N.C. 2006). Thus, we do not rely on the Act to "decrease" the maximum term of imprison-

ment Simmons could have served, but rather to *establish* that maximum term of imprisonment. For, unlike the sort of "guidelines systems" referred to in *Rodriquez*, no circumstances exist under the Structured Sentencing Act in which a North Carolina judge may "impose a sentence that exceeds the top" of the "range" set forth in the Act. *Rodriquez*, 553 U.S. at 390.

Our conclusion that the Act serves as a legislative mandate and not as a "guidelines system[ ]" accords with that of the other courts of appeal to have considered this question. *See United States v. Haltiwanger*, 637 F.3d 881 (8th Cir. 2011); *United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008).

In *Pruitt*, the Sixth Circuit assessed the impact of *Rodriquez* on North Carolina predicate convictions under ACCA, and it found "no reasonable basis on which to distinguish the North Carolina" Act from "the recidivism enhancement provision at issue in *Rodriquez*." *Id.* at 423. The *Pruitt* court thus concluded that "it is necessary to consider the defendant's particular prior record level—and not merely the worst prior record level –- in determining whether a conviction was for an offense 'punishable' by a term exceeding one year." *Id.* at 424. Although in our earlier unpublished opinion in this case we held that *Rodriquez* did not require rejection of the *Harp* rule, the Sixth Circuit's analysis now seems clearly correct given the Supreme Court's subsequent ruling in *Carachuri*. *See* 130 S. Ct. at 2587 n.12.

Our determination that *Carachuri* undermines our previous approach mirrors that made in *Haltiwanger*. There, the Eighth Circuit analyzed whether a prior conviction for a violation of Kansas law qualified as a "felony drug offense" under 21 U.S.C. § 841(b)(1). 637 F.3d at 882-83. As in North Carolina, the "Kansas sentencing structure ties a particular defendant's criminal history to the maximum term of imprisonment." *Id.* at 884. The Eighth Circuit initially upheld a sentencing enhancement by looking to the "maximum penalty that could

be imposed for the same crime on other recidivist offenders," but the Supreme Court vacated and remanded for reconsideration in light of *Carachuri*. *Id.* at 882-83. Upon reconsideration, the Eighth Circuit reversed course and held that "where a maximum term of imprisonment . . . is directly tied to recidivism," the "actual recidivist finding . . . must be part of a particular defendant's record of conviction for the conviction to qualify as a felony." *Id.* at 884.

2.

*Carachuri* also forbids us from considering hypothetical aggravating factors when calculating Simmons's maximum punishment. We again focus first on Simmons's "conviction itself," *Carachuri*, 130 S. Ct. at 2586, and his conviction makes clear that he was neither charged with nor convicted of an aggravated offense, and that he therefore could not receive a sentence exceeding one year's imprisonment. As in *Carachuri*, the "mere possibility that [Simmons's] conduct, coupled with facts outside the record of conviction, could have authorized" a conviction of a crime punishable by more than one year's imprisonment cannot and does not demonstrate that Simmons was actually convicted of such a crime.[4] *Id.* at 2589.

The panoply of procedural protections afforded to offenders facing a potentially aggravated sentence further strengthens this conclusion. As detailed above, an offender can receive an aggravated sentence only if: (1) North Carolina provides him with 30-days' notice of its intent to prove the necessary aggravating factors, N.C. Gen. Stat. § 15A-

---

[4]We recognize that this conclusion is at odds with that of the Sixth Circuit, which upheld, over Judge Merritt's dissent, resort to the aggravated range in calculating an offense's maximum punishment. *See Pruitt*, 545 F.3d at 421-22; *id.* at 426-30 (Merritt, J., dissenting). This holding in *Pruitt*, however, preceded *Carachuri*, in which the Supreme Court expressly directed courts not to take into account potential facts "outside of the record of conviction." *Carachuri*, 130 S. Ct. at 2589.

1340.16(a6); (2) he admits (or a jury finds) the existence of those factors, *id.* § 15A-1340.16(a1); and (3) the sentencing judge issues written findings justifying such a sentence. *Id.* § 15A-1340.16(c).

These protections closely resemble the "mandatory notice and process requirements," contained in 21 U.S.C. § 851, which figured in the *Carachuri* reasoning. *See* 130 S. Ct. at 2587-88. There, the Supreme Court concluded that to account for a hypothetical enhancement –- of which the Government never provided Carachuri notice—would be to "dismiss these procedures as meaningless." *Id.* The same holds true here. North Carolina prosecutors declined to pursue Simmons as an aggravated offender, and we will not second-guess their judgment. *See id.* at 2588 (noting that the application of a sentencing enhancement "after the fact" based on factors that the State did not allege would "denigrate the independent judgment of state prosecutors").[5]

## IV.

The Government does not dispute that *Carachuri* held that "a recidivist finding" can "only" "set the 'maximum term of imprisonment' . . . when the finding is a part of the record of conviction." *Id.* at 2587 n.12. The Government also recognizes, as it must, that the only other appellate courts to have

---

[5]We note that § 851 (the federal procedural statute analyzed in *Carachuri*) and the North Carolina Act differ in some respects. On one hand, § 851, unlike the Act, requires a prosecutor to "file[ ] an information with the court" specifying the basis for the enhancement. *Compare* 21 U.S.C. § 851(a)(1) *with* N.C.G.S. § 15A-1340.16(a4). On the other hand, the Act contains two protections that § 851 lacks: a jury's finding (or an admission) of aggravating factors *and* written judicial findings justifying imposition of an aggravated sentence. *See id.* §§ 15A-1340.16(a1), (c). Notwithstanding these differences, § 851 and the Act function identically in providing the elements crucial to the *Carachuri* Court's analysis: both provide the defendant "notice of the Government's intent," and both "authorize prosecutors to exercise discretion when electing whether to pursue [an] . . . enhancement." *Carachuri*, 130 S. Ct. at 2587-88.

considered the question have held that Supreme Court precedent requires rejection of enhancements similar to the one here. Tellingly, in neither case did the Government seek rehearing *en banc*. Nonetheless, the Government insists that *Harp* remains good law and that we should distinguish *Carachuri*.[6] We find neither of these arguments persuasive.

## A.

Contrary to the Government's contention, *Carachuri* directly undermines the *Harp* rationale. In *Harp* we analyzed a sentencing enhancement that turned on the presence of a prior conviction for a "crime punishable by imprisonment for a term exceeding one year." *Harp*, 406 F.3d at 246 (quoting 18 U.S.C. § 922(g)). We held that "'punishable' is an adjective used to describe 'crime,'" and that "it is more closely linked to the conduct, the crime, than it is to the individual convicted of the conduct." *Id.* (internal quotation omitted). Thus, we concluded that a North Carolina conviction is for "a crime punishable by imprisonment for a term exceeding one year" if "*any* defendant charged with that crime could receive a sentence of more than one year." *Id.* (emphasis in original).[7]

---

[6]In a Rule 28(j) letter, the Government contends that *McNeill v. United States*, 2011 WL 2175212 (2011), supports its position. *McNeill* held that a defendant's predicate North Carolina drug offenses, for which he had received 10-year sentences, qualified under ACCA as offenses carrying a maximum term of imprisonment of ten years, even though those state offenses did not carry a 10-year maximum at the time of his federal conviction. Nothing in *McNeill* undermines our holding here, for crucial to the *McNeill* holding was the fact that "North Carolina courts actually sentenced [McNeill] to ten years in prison." *Id.* at *4. In contrast, no North Carolina court "actually sentenced" Simmons to any imprisonment. Moreover, because McNeill's predicate convictions occurred before the Act's enactment, the Court held that the Act did not even apply to those convictions. *Id.* at *6. Thus, as the Government concedes, the issue of how to calculate the maximum punishment of an offense under the Act was "not before the Court" in *McNeill*.

[7]The principal dissent maintains that, had Congress intended our reading of the statute, it could have defined a "felony drug offense" as an "of-

This reasoning assumes that an offender's conduct alone determines the nature of his "crime." This is of course true for constitutional purposes. *See Carachuri*, 130 S. Ct. at 2581 n.3 (noting that the "Constitution does not require treating recidivism as an element of the offense"). But *Carachuri* rejected this conclusion for purposes of analyzing whether a prior state conviction constitutes a predicate permitting the application of a federal sentencing enhancement. There, the Supreme Court made clear that when a state statute provides a harsher punishment applicable only to recidivists, it creates different "offenses" for the purpose of federal sentencing enhancements. Thus, even though the statute setting forth the predicate offense in *Carachuri*, 21 U.S.C. § 844(a), proscribed only one type of conduct—"possess[ion of] a controlled substance" -– the Court held that it created "separate and distinct" offenses of "misdemeanor simple possession" and "felony simple possession." *Carachuri*, 130 S. Ct. at 2581 n.3. It did so because "the fact of a prior conviction must nevertheless be found . . . before a defendant is subject" to punishment exceeding one year's imprisonment. *Id.*; *see also id.* (repeating that "the fact of a prior conviction must still be found before a defendant is subject to felony punishment").[8]

---

fense for which the defendant is punished by imprisonment for a term exceeding one year." Certainly, Congress could have been clearer. However, that argument cuts both ways; if Congress had intended the dissent's reading, it could have written the statute in terms of "an offense for which *any* defendant could be subject to punishment for more than one year."

[8]The principal dissent asserts that it too "looks only at the fact of Simmons' prior conviction." This contention totally misreads *Carachuri*. By "prior conviction," the *Carachuri* Court was referring to a conviction, imposed *prior to a predicate conviction*, which transformed a predicate conviction for "simple" possession into one for "recidivist" possession. 130 S. Ct. at 2581 n.3. By contrast, the "prior conviction" to which the dissent "looks" is merely Simmons's predicate conviction itself. The dissent completely ignores the fact that Simmons—at the time of that predicate conviction in 1996—lacked the sort of "prior conviction" that would have converted the 1996 offense of conviction into a recidivist crime. It is only by overlooking this absence of a "prior conviction," *i.e.* a conviction *prior* to the 1996 predicate conviction, that the dissent can conclude that Simmons's predicate conviction was for an "offense" punishable by a sentence reserved for recidivist possession.

*Rodriquez* is consistent with this conclusion. There the Court held that when a "defendant is given a higher sentence under a recidivism statute," his sentence "is a stiffened penalty for the *latest crime*, which is considered to be an *aggravated offense* because [it is] a repetitive one." 553 U.S. at 386 (internal quotation omitted) (emphasis added). In other words, repetition transforms the underlying criminal conduct into an aggravated, different "offense." A first-time offender does not commit such an aggravated, repetitive "offense"; he therefore cannot be convicted of any offense "punishable" by a term of imprisonment reserved for repeat offenders. In this case, Simmons's 1996 North Carolina conviction was for only non-aggravated, first-time marijuana possession. Accordingly, his "offense" was not "punishable" by a term of imprisonment exceeding one year, which is reserved for repeat offenders.

### B.

Given these facts, *Carachuri* and *Rodriquez* clearly foreclose reliance on *Harp*. The Government, while barely mentioning *Rodriquez*, attempts to distinguish *Carachuri* on three grounds. We address each in turn.

### 1.

First, the Government claims that, unlike the statute at issue in *Carachuri*, the North Carolina Structured Sentencing Act "does not . . . define separate recidivist offenses." Appellee's Br. at 7. This is assertedly so because the Act creates eighteen sentencing ranges for each felony class. The Government argues that the Act therefore fails to create separate offenses because it recognizes "*gradations* of recidivism," while the statute in *Carachuri* differentiated between offenses based "solely on the *fact* of recidivism." *Id.* at 8 (emphasis added).

The Government's argument rests on a false premise. Contrary to the Government's contention, the statute in *Carachuri* did *not* create distinctions based "solely on the fact of recidi-

vism"; rather, it provided three sentences corresponding to three different gradations of recidivism. *See* 21 U.S.C. § 844(a) (providing a maximum of one year's imprisonment if a defendant is a first-time offender, two years' imprisonment if a defendant has a "prior conviction," and three years' imprisonment if he has "two or more prior convictions"). Perhaps because of this, nothing in *Carachuri* offers any support for the Government's "gradations" argument. The Supreme Court there inferred "separate and distinct" offenses because "recidivist . . . possession" (in reality the intermediate punishment provided by the statute) required proof of "the fact of a prior conviction." 130 S. Ct. at 2581 n.3. The same is true here. Like the statute at issue in *Carachuri*, the North Carolina Structured Sentencing Act metes out harsher punishment only when the prosecution proves "the fact" of a defendant's prior convictions. Thus, when used as a predicate for federal sentencing purposes, the Act creates separate offenses that in turn yield separate maximum punishments.[9]

2.

Second, the Government suggests that the *Carachuri* holding does not apply here because the state predicate for which Simmons was convicted was a "Class I felony," while the state predicate for which Carachuri was convicted was not a "recidivist offense." Appellee's Br. at 9. This argument too rests on a false premise; it assumes that the "Class I felony" for which Simmons was convicted constitutes the sort of "recidivist offense" that Carachuri avoided. But as explained above, Simmons's "Class I felony" does not qualify as a "re-

---

[9]Contrary to the suggestion of the principal dissent, our holding establishes no "unworkable rule." Rather, it requires examination of three pieces of evidence: the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range. All three appear prominently on the first page of an offender's state record of conviction. *See* N.C. Forms AOC-CR-601, AOC-CR-603. From this, it is a simple matter to refer to the statutory table provided by the Structured Sentencing Act and compute the applicable maximum punishment.

cidivist offense," because Simmons's record of conviction—like Carachuri's—lacked the finding necessary to expose him to a recidivist sentence. Accordingly, the North Carolina Structured Sentencing Act restricted Simmons's maximum sentence to eight months' community punishment, in the same way that § 844(a) restricted Carachuri's maximum sentence to one year.

Of course, the analysis in *Carachuri* was more complicated than that here. The question of whether Carachuri's predicate offense qualified as an "aggravated felony" under the INA turned on whether the "'proscribe[d] conduct' of [his] state offense" was "punishable as a felony under . . . federal law." *Carachuri*, 130 S. Ct. at 2588 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006)). In other words, the INA required resort to a hypothetical—an assessment of whether Carachuri, by committing a state crime, had committed a "fictional federal felony."[10] *Id.* But the Government went further, asking the Court to consider whether state prosecutors *could have* charged Carachuri with conduct that in turn *could have* corresponded to such a fictional federal crime; the Government's argument therefore relied on a "hypothetical to a hypothetical." *Id.* (internal quotation marks omitted).

The inquiry here is simpler, because 21 U.S.C. § 841(b)(1)(B) does not require comparison of Simmons's

---

[10]The principal dissent errs in asserting that this "state-to-federal offense 'extrapolation' analysis" explains the Court's "look at the specific characteristics of Carachuri's conduct." Rather, this "extrapolation analysis" required only that the Court assess whether Carachuri's "state *offense . . .* proscribe[d] conduct punishable as a felony under federal law." *Lopez*, 549 U.S. at 60 (emphasis added). Thus, what the dissent characterizes as the "*Lopez* analysis" focuses on the predicate *offense*, not on the "specific characteristics" of the defendant's conduct. The *Carachuri* Court looked to those "specific characteristics" because it had to determine the nature of Carachuri's predicate "offense." In doing so, the Court concluded that Carachuri's predicate offense (like Simmons's here) was simple, not recidivist, drug possession. *See Carachuri*, 130 S. Ct. at 2581 n.3.

state offense to a fictional federal crime. That simplicity, however, does not render the *Carachuri* holding inapplicable here. The Supreme Court's rejection of the Government's argument in *Carachuri* had nothing to do with the *number* of hypotheticals in the analysis; after all, established precedent required resort to the initial hypothetical in determining whether a state offense was "punishable" as a federal felony. *See Lopez*, 549 U.S. at 55-56. In *Carachuri* the Court simply took issue with the specific character of the Government's second hypothetical—the consideration of "facts not at issue in the crime of conviction . . . to determine whether Carachuri-Rosendo could have been charged with a federal felony." *Carachuri*, 130 S. Ct. at 2588 (emphasis omitted). Such reliance on "facts not at issue in the crime of conviction" runs afoul of *Carachuri*, regardless of how many hypotheticals pervade the overall inquiry. Accordingly, because no findings of recidivism or aggravation appear in Simmons's state record of conviction, those enhancements may not be considered in determining whether Simmons's offense constitutes a "felony drug offense" under the CSA.

3.

Third, the Government insists that Simmons's prior conviction, unlike Carachuri's, was for "conduct that one would expect would be 'punishable' by more than one year in prison." Appellee's Br. at 10. But the Government has provided no evidence in support of the assertion that "one would expect" Simmons's first-time possession of less than ten pounds of marijuana to trigger a sentence of imprisonment exceeding one year. After all, North Carolina judged Simmons's crime worthy of *no* imprisonment—making it in one sense even less serious than Carachuri's crime. *See Carachuri*, 130 S. Ct. at 2580 (noting that Carachuri received prison time). Surely well-established federalism principles do not permit a federal court to reject North Carolina's judgment as to the seriousness of a North Carolina crime, prosecuted in a North Carolina court and adjudicated by a North Carolina

judge, merely because the federal court might "expect" a more serious punishment.

Indeed, it is the Government's approach—requiring a federal court to calculate an offender's maximum punishment by interpreting a prior state offense in a manner *outlawed* by the state—that invites results that are, as in *Carachuri*, "counterintuitive and unorthodox." *Carachuri*, 130 S. Ct. at 2585 (internal quotation omitted). For example, the Government's approach would dictate that a federal court treat a pharmacist's first-time failure to check a minor's identification before selling Sudafed –- a misdemeanor for which a North Carolina offender faces a maximum of only 45 days' community punishment, *see* N.C. Gen. Stat. §§ 90-113.52(c), 90-113.56(b), 15A-1340.23(c)—as a predicate offense "punishable" by nearly *two decades* of imprisonment. *See id.* §§ 90-113.56(b) (providing that a third-time offender commits a Class I felony), 14-7.1 & 14-7.6 (permitting a "habitual felon" convicted for a Class I felony to be punished as a Class C felon), 15A-1340.17(c), (e) (fixing the maximum punishment for an aggravated and recidivist Class C felony at 228 months' imprisonment).

Or to take another example: under the North Carolina Structured Sentencing Act, a daycare provider who willfully administers any over-the-counter medication to a child, without written parental authorization, commits a Class A1 misdemeanor for which a first-time offender faces a maximum sentence of sixty days' imprisonment. *Id.* §§ 110-102.1A(a), (d), 15A-1340.23. Yet the Government's approach—requiring calculation of an offense's maximum term of imprisonment by reference to an imagined worst-case offender—would require a federal court to consider this daycare provider as having committed an offense "punishable" by 228 months' imprisonment. *Id.* §§ 14-50.22 (converting any Class A1 misdemeanor into a Class I felony if performed "in association with[ ] any criminal street gang"), 14-7.1, 14-7.6 (converting

Class I felony committed by a "habitual felon" into Class C felony), 15A-1340.17(c), (e).

Such an approach—requiring federal courts to treat even minor state crimes as serious felonies—makes a mockery of North Carolina's carefully crafted sentencing scheme. It also disregards the rationale of *Carachuri*, which emphasized that federal courts should not apply hypothetical sentencing enhancements "after the fact" in a manner that would "denigrate the independent judgment of state prosecutors to execute the laws" of their states. 130 S. Ct. at 2588. No less than the Texas prosecutors in *Carachuri*, the North Carolina legislature deserves our deference here. And that legislature has chosen to adopt a strictly regimented sentencing scheme that requires sentencing judges to "effectively tailor[ ] the statutory maximum punishment available to each individual defendant." *Pruitt*, 545 F.3d at 420. We cannot upend this scheme by lumping all defendants—and virtually all crimes—into the same category for the purposes of federal sentencing.

V.

For the foregoing reasons, we vacate Simmons's sentence and remand for proceedings consistent with this opinion.[11]

*VACATED AND REMANDED*

DUNCAN, Circuit Judge, dissenting:

I am in complete agreement with Judge Agee's thoughtful dissent and write separately only to explain the basis of my

---

[11]Before the original panel, Simmons also argued that the district court erred in "failing to provide a hearing" so that he "could establish that counsel in his 1996 conviction provided ineffective assistance." *Simmons*, 340 F. App'x at 144-45. The panel properly rejected this argument. The CSA establishes a strict five-year statute of limitations governing challenges to prior convictions, *see* 21 U.S.C. § 851(e), and Simmons first raised this argument over a decade after his 1996 conviction.

conviction that the statutory language must cabin our inquiry. Although I have the greatest respect for the majority's attempts to grapple with *Carachuri*, I remain unconvinced that that decision, based on an unrelated, civil statutory scheme, offers any clear direction here. In that sense, it is not unique. As Justice Scalia recently observed, the Supreme Court's jurisprudence has hardly distilled ACCA's murky waters. *Derby v. United States*, 131 S. Ct. 2858, 2860 (2011) (Scalia, J., dissenting) (characterizing the Supreme Court's ACCA decisions as "incomprehensible to judges"). In such circumstances, it is particularly compelling that we navigate those waters by the plain light of the statutory text.

Here, that text does not ask whether the defendant had a "prior conviction" for which *he* could be *punished* by more than one year of imprisonment. To the contrary, it compels us to determine whether the defendant had a prior conviction for "an offense that is punishable" by more than one year of incarceration under 21 U.S.C. § 841(b)(1)(D). Under North Carolina law, Simmons's Class I felony offense was so punishable. *See* N.C. Gen. Stat. §§ 15A-1340.17, 90-95(a). In my view, that ends our inquiry.

AGEE, Circuit Judge, dissenting:

The majority opinion correctly identifies the issue on appeal in this case: whether the analysis set forth in *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), remains good law in light of the Supreme Court's decisions in *United States v. Rodriquez*, 553 U.S. 377 (2008), and *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010) ("Carachuri"). *Cf.* Maj. op. at 7. Because I do not find that either decision compels a result contrary to the plain language of the relevant statutes, I find no error in imposition of an enhanced sentence under 21 U.S.C. § 841(b)(1)(D) and would affirm the district court's judgment that Simmons' prior North Carolina state conviction constituted a "felony drug offense" as defined in 21 U.S.C. § 802(44).

## I.

The proper starting point is the relevant statutory language. *Jimenez v. Quarterman*, 555 U.S. 113, ___, 129 S. Ct. 681, 685 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute.") (citation omitted); *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter.") (quotation and citation omitted). Twenty-one U.S.C. § 841(b)(1)(D) provides that any person convicted of possession with intent to distribute less than 50 kilograms of marijuana "after a prior conviction for a felony drug offense has become final, shall be sentenced to a term of imprisonment of not more than 10 years . . . ." As defined by Congress, a "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . ." 21 U.S.C. § 802(44). Thus, in order for Simmons to be subject to the enhanced sentencing provisions of § 841(b)(1)(D), he must have "a prior conviction for" "an offense that is punishable by imprisonment for more than one year."

Critical to the analysis is the fact that Congress chose in § 802(44) not to define "felony drug offense" in terms of an individual defendant's particular sentencing factors, but in terms of the statutorily created offense. As we explained in *Harp*, because the word "punishable" is an adjective that describes "offense," the plain language of § 802(44) points to an offense-based analysis rather than a defendant-based analysis. 406 F.3d at 246 (Punishable "is more closely linked to the conduct, the crime, than it is to the individual convicted of the conduct." (quoting *United States v. Jones*, 195 F.3d 205, 207 (4th Cir. 1999))).

As more fully explained below, the *ratio decidendi* of neither *Carachuri* nor *Rodriquez* alter this common sense reading of the clear terms of § 802(44). That statute thus requires

examining whether the statutory offense — not the particular defendant's conduct — is "punishable" by more than one year of imprisonment. *See Jimenez*, 129 S. Ct. at 685 ("It is well established that, when the statutory language is plain, we must enforce it according to its terms."). We must apply the statute as Congress has written it regardless of how other terms in other statutes may be construed. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [the statute] begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (internal citation and quotation marks omitted).

Had Congress intended a different result, it could have written § 802(44) differently. As this court observed in *Jones*,

> Congress could have written § 922(g)(1) differently had it intended to focus on the individual in particular rather than the crime for which the individual was convicted. Instead of the phrase "individual convicted . . . of a *crime punishable* by imprisonment for a term exceeding one year," Congress could have used the phrase, "individual *punished* by imprisonment for a term exceeding one year" or even "individual *sentenced* for imprisonment for a term exceeding one year."

195 F.3d at 207 (first two emphases added). Similarly, the construction propounded by the majority rewrites § 802(44) to define "felony drug offense" not as "an offense that is punishable by imprisonment for more than one year," but as, for example, "an offense for which the defendant is punished by imprisonment for more than one year" or "an offense for which the defendant is actually subject to punishment by imprisonment for more than one year." This result fails to give effect to the statute as written, and thus usurps the proper

role of the Congress. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 376 (1986) ("As we so often admonish, only Congress can rewrite [a] statute.").

While other statutes written differently and covering different circumstances (as in *Carachuri*) may be read in other ways, § 802(44) says what it says. Nothing in that statute, or any other, directs us to alter the plain meaning of its terms so as to ignore the scope of N.C. Gen. Stat. § 90-95 and look instead to individual defendants' particular acts. It bears noting, the issue we resolve here is not one of constitutional mandate, but whether federal jurisprudence set out by the Supreme Court in other cases involving other statutes alters the plain reading of § 802(44).

The sentence Simmons actually received or was individually subject to under N.C. Gen. Stat. § 15A-1340.10, *et seq.* ("North Carolina Structured Sentencing Act" or "the Act"), does not impact the analysis performed under § 802(44). Simmons did not contend in the district court, or at any time during his appeal, that other defendants charged and convicted under the same North Carolina statute that he was convicted of violating could not have been imprisoned for more than one year. Nor could he have made that argument: N.C. Gen. Stat. § 90-95(a) is a Class I felony and a sentence of up to fifteen months' incarceration is authorized for its violation. N.C. Gen. Stat. § 15A-1340.17. Consequently, Simmons' conviction was for an offense that is punishable by imprisonment for a term of more than one year.

## II.

The majority concludes the Supreme Court's decisions in *Rodriquez* and *Carachuri* invalidate our prior reading of § 802(44). *See, e.g.*, *Harp*, 406 F.3d 247. As an initial matter, the fact that the Supreme Court remanded this case for reconsideration in light of *Carachuri* is not a basis upon which that conclusion can rest.

In ordering remand, the Supreme Court did not determine the merits of this case. A remand indicates only that intervening case law "*may* affect the outcome of the litigation" and that the court of appeals should have the opportunity to fully consider the issue in light of the additional precedent. *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) (emphasis added). The purpose of the remand is served by considering the record anew, taking into consideration the potentially relevant case law. As Justice O'Connor, sitting by designation with the original remand panel, explained in oral argument, "it's certainly possible that the *Carachuri-Rosendo* case has no relevance to this case at all. It's just not the same." (Panel Oral Arg. 16:32.) With respect for the position taken by my colleagues in the majority, I am simply not persuaded that either *Carachuri* or *Rodriquez* dictates a contrary position from our earlier decision.

As the majority opinion notes, *Carachuri* involved an immigration proceeding and the case *sub judice* concerns criminal sentencing. I agree with the majority that this distinction is not a dispositive one in and of itself. What is dispositive, though, is that the immigration statutes interpreted by the Supreme Court in *Carachuri* differ in critical respects from the statutes at issue in the case at bar.

Facing deportation, Carachuri sought to apply for discretionary cancellation of removal, something for which he was ineligible if he had previously been "convicted of a[n] 'aggravated felony.'"[1] *See* 130 S. Ct. at 2583 (citing 8 U.S.C. § 1229b(a)(3)) (brackets in original). The relevant inquiry, then, was whether either of his two Texas convictions for misdemeanor simple drug possession, was an "aggravated felony" under 8 U.S.C. § 1229b(a)(3).

---

[1]As noted by the Supreme Court, the term "aggravated felony" "is unique to Title 8, which covers immigration matters." *Carachuri*, 130 S. Ct. at 2585. This term appears in no other place in the U.S. Code.

In making that determination, the Supreme Court navigated a "maze of statutory cross-references" to determine whether Carachuri's existing state conviction could have been an offense that would be punishable as a federal felony under the Controlled Substances Act ("CSA") had he been charged and convicted of such in a federal court. 130 S. Ct. at 2581. The need for this hypothetical projection of the state offense into a federal corollary offense arose because under *Lopez v. Gonzales*, 549 U.S. 47 (2006), "[u]nless a state offense is punishable as a federal felony[,] it does not count" as an "aggravated felony" for immigration law purposes. *Id.* at 55; *see also* 130 S. Ct. at 2582.

The Supreme Court concluded that "except for simple possession offenses involving isolated categories of drugs not presently at issue, only recidivist simple possession offenses are 'punishable' as a federal 'felony' under the [CSA]." 130 S. Ct. at 2581 (emphasis omitted). And in footnote three, the Court observed that although 21 U.S.C. § 844(a) did not define separate offenses based on the presence or lack of recidivism, it would nonetheless "view § 844(a)'s felony simple possession provision as separate and distinct from the misdemeanor simple possession offense that section also proscribes." *Id.* at 2581 n.3. Consequently, the *Carachuri* Court concluded only "recidivist simple possession" offenses "might, conceivably, be an 'aggravated felony.'" Because Carachuri's Texas conviction was not for a recidivist simple possession offense, the hypothetical federal *Lopez* corollary offense was not an "aggravated felony" for purposes of 8 U.S.C. § 1229b(a)(3). Carachuri thus did not fall within the statute's prohibition against seeking withholding of removal.

The majority opinion relies on the foregoing statute-specific analysis in *Carachuri* to project that Simmons was not "convicted" of an offense punishable by more than one year of incarceration under the Act. The majority accurately notes that Simmons himself — as a first-time offender with a low criminal history score — could not have received a sen-

tence exceeding eight months' community service punishment. Maj. op. at 11. That conclusion, however, does not axiomatically resolve our case and does not take into account the text and context of the inquiry in *Carachuri*. That is, in order to perform the requisite state-to-federal offense "extrapolation" analysis in *Carachuri*, the Supreme Court had to look at the specific characteristics of Carachuri's conduct underlying the Texas conviction. And because the Court was concerned with how Carachuri was actually charged and the characteristics of his conduct for purposes of determining whether the hypothetical extrapolation would work, the Court's inquiry was necessarily defendant-specific.

By contrast, the issue in the case at bar is whether the North Carolina *offense* for which Simmons was convicted was "punishable" by more than one year of incarceration. It does not raise the question (from *Carachuri*) of what hypothetical offense never prosecuted by a different sovereign the defendant could have been, but was not, charged with, given the specific characteristics underlying his state conviction. Put another way, Simmons' conviction "serve[s] as [the Court's] 'starting place'" only insofar as it identifies Simmons' statutory offense. *Cf.*, Maj. op. at 11 (quoting *Carachuri*, 130 S. Ct. at 2586). After that determination is made, the circumstances surrounding Simmons' conviction and the state prosecutor's charging decision are no longer relevant to the analysis.

Instead, our focus should be on "the terms of the provisions and the 'commonsense conception' of those terms." *Carachuri*, 130 S. Ct. at 25785. Section 802(44) directs us to the offense prohibited by N.C. Gen. Stat. § 90-95 — rather than to a specific defendant charged thereunder — to determine whether a violation of that statute is one for which punishment of more than one year is authorized. The inquiry here could not be more different from the hypothetical extrapolation and defendant-specific inquiry contained in the *Carachuri* analysis. At bottom, the dispositive question in this

case is whether Simmons' conviction is for violating a statute that provides for punishment exceeding 12 months' incarceration. Because a violation of N.C. Gen. Stat. § 90-95(a) is punishable by imprisonment of up to 15 months, the answer to that query is a simple "yes."**²** *Cf.* N.C. Gen. Stat. § 15A-1340.17.

For this reason, too, the majority is incorrect that this approach wrongly "assumes that an offender's conduct alone determines the nature of his 'crime'" for purposes of determining "whether a prior state conviction constitutes a predicate permitting the application of a federal sentencing enhancement." Maj. op. at 16 (citing *Carachuri*, 130 S. Ct. at 2581 n.3, and *Rodriquez*, 553 U.S. at 386). Instead, I submit this approach recognizes that the defendant-specific inquiries in *Carachuri* and *Rodriquez* do not present the same question at issue here, where the statute directs us to determine how an offense is punishable, rather than how a particular defendant is or could be punished. That is, Congress chose to set the permissible punishment by the parameters of the state statutory offense, not in light of an offender's individual conduct.

In *Carachuri*, the Government's position rested on theorizing what convictions Carachuri could have been prosecuted for, regardless of his actual state statute of conviction. Here, the Government's position — and mine — rests squarely on Simmons' actual statute of conviction, N.C. Gen. Stat. § 90-95. Unlike the layers of conjecture required to project what crimes Carachuri could have committed, here no speculation or extrapolation is needed. The core issue is whether the North Carolina statute establishes an offense punishable by

---

**²**The majority's analysis of the Act confuses the salient issue by focusing on the permitted sentences for different defendant-specific combinations of criminal history and offense characteristics. While individual defendants' maximum sentences will differ according to a multitude of variables under the Act, the authorized punishment for violating N.C. Gen. Stat. § 90-95 does not alter absent legislative change; that maximum is fifteen months, which meets the plain language of § 802(44).

imprisonment for more than one year. It does. There is thus no reason to speculate what Simmons' conduct also could have constituted if prosecuted by a separate sovereign under that sovereign's different statute.

Contrary to the majority opinion's implication, the approach I propose does not implicate, let alone run afoul of the principle expressed in *Carachuri* that a federal court may not "ex post, enhance the state offense of record just because facts known to it would have authorized a greater penalty under either state or federal law." 130 S. Ct. at 2586. Indeed, it is the majority's approach that looks beyond the statute of conviction to postulate whether any additional factors can support additional findings as to the nature and substance of Simmons' conduct. In contrast, the approach applying an offense-based inquiry looks solely to the statute underlying the conviction and how that offense is punishable and nothing else. Consequently, in addition to being consistent with the plain language of § 802(44), this approach promotes uniformity and consistency because (absent future legislative action) a particular state offense would or would not always be a predicate offense under the Armed Career Criminal Act ("ACCA") for future federal sentencing purposes. Because the inquiry is offense-specific, all that is needed are the relevant North Carolina statutes: N.C. Gen. Stat. § 90-95, the offense, and N.C. Gen. Stat. § 15A-1340.17, the statutorily authorized sentence for that offense. We would not be required to look at Simmons' record any further than to identify the offense of conviction.

The majority opinion puts great weight on footnote 3 of *Carachuri* to undergird its position; but that weight is more than the footnote can bear. What the Supreme Court said, twice, in that footnote is "the fact of a prior conviction must nonetheless be found before a defendant is subject to felony punishment." *Id.* at 2581 n.3]; *see also id.* ("But the fact of a prior conviction must still be found—if only by a judge and if only by a preponderance of the evidence—before a defen-

dant is subject to felony punishment."). I submit that is exactly what this dissenting approach does: it looks only at the fact of Simmons' prior conviction to see that the statute of conviction carries a punishment of up to fifteen months' incarceration. While the Supreme Court had to parse Carachuri's Texas conviction to complete the *Lopez* analysis, no such parsing is needed here.

Significantly, although the Supreme Court had the opportunity in *Carachuri* to verify what it means for an offense to be "punishable" as a felony, it did not do so. The Government argued in *Carachuri* that "the only statutory text that matters is the word 'punishable' in 18 U.S.C. § 924(c)(2): Whatever conduct might be 'punishable' as a felony, regardless of whether it actually is so punished or not, is a felony for immigration law purposes." *Carachuri*, 130 S. Ct. at 2587. Particularly relevant for our case, the Supreme Court did *not* address this argument on its textual merits. To quote the Court, the reason it rejected the Government's "punishable" language argument was that in performing the *Lopez* analysis, "the circumstances of Carachuri-Rosendo's prosecution were not identical to those hypothesized by the Government." *Id.* That is, the facts in *Carachuri* did not align with the Government's argument and could not "be reconciled with the more concrete guidance of [§ 1229b(a)(3)], which limits the Attorney General's cancellation authority only when the noncitizen has actually been 'convicted of a[n] aggravated felony' — not when he merely could have been convicted of a felony but was not." *Id.* The Supreme Court thus had the clear opportunity to embrace the reasoning of the majority opinion, but did not.

*Carachuri* and the case at bar are further distinguished on the charging decisions incident to the underlying state convictions. Carachuri had been convicted of simple drug possession under Texas law. The Supreme Court noted that Texas law authorized a sentencing enhancement for such a conviction only if the prosecutor charged the defendant as having been previously convicted of that offense or one of a similar class.

Although the Texas prosecutor could have charged Carachuri as a recidivist and sought such an enhancement, the prosecutor elected not to do so, and instead charged him only for simple possession. Thus, under the relevant Texas provisions by which Carachuri was charged and convicted, the conviction was for simple possession without a recidivist charge.

Neither does *Rodriquez*'s discussion of recidivist factors negate my proposed reading of § 802(44). While a recidivist finding could have increased Simmons' sentence to more than twelve months of actual imprisonment, a multitude of other factors also could have caused an adjustment of his sentence. Under the Act at least forty different factors can alter an otherwise presumptive *sentence*, but *not* the coverage of the charging statute. *See* N.C. Gen. Stat. § 15A-1340.16(d)-(e).

If anything, *Rodriquez* would seem to support the Government's position. As the majority opinion recognizes, *Rodriquez* rejected the concept that some construct outside the statute of conviction, like a guidelines range, could alter what the terms of the federal statutory enhancement covered:

> [T]he concept of the 'maximum' term of imprisonment or sentence prescribed by law was used in many statutes that predated the enactment of [the] ACCA and the federal Sentencing Reform Act of 1984, and in all those statutes the concept necessarily referred to the maximum term prescribed by the relevant criminal statute, not the top of a sentencing guideline range.

128 S. Ct. at 1792. I would submit it is the majority opinion, contrary to *Rodriquez*, that looks to the *sentencing* factors under the Act to determine the scope of § 802(44) and not to Simmons' state offense of conviction: a crime which the North Carolina statute provides is "punishable" for up to fifteen months' imprisonment.

There is no separate recidivist possession charge under North Carolina law. The offense — N.C. Gen. Stat. § 90-95 — is the same charge, regardless of a defendant's criminal history. Only after a defendant is convicted, at sentencing, does criminal history come into play. Moreover, over forty factors, besides recidivism, may go into a North Carolina sentencing decision under Gen. Stat. § 90-95. N.C. Gen. Stat. § 15A-1340.16 and § 15A-1340.17. A defendant is convicted of the same offense — N.C. Gen. Stat. § 90-95 — regardless of his criminal history or the specific characteristics of that offense.

Admittedly, the other components used in determining where within the Act a particular defendant falls must be noticed prior to sentencing. If a prosecutor seeks to depart from the presumptive range to the aggravated range, the State must provide notice of its intent to prove aggravating factors and the jury must find those factors beyond a reasonable doubt. *See* § 15A-1340.16. However, the aggravated factors need not be part of the indictment or formal charge, nor is the conviction itself different from a conviction for the presumptive (or, indeed, mitigated) offense.

N.C. Gen. Stat. § 90-95 constitutes one offense under North Carolina law; the distinguishing factors of criminal history and offense characteristics become relevant only at sentencing, when deciding a particular defendant's sentencing range. They have no bearing on the inquiry here, that is, whether the statutory offense itself is punishable by more than one year imprisonment.

The majority opinion also contends its approach is appropriate because it is consistent with the "panoply of procedural protections afforded to offenders facing a potentially aggravated sentence" and is necessary so as not to "second-guess [state prosecutors'] judgment" that Simmons' conduct did not contain aggravated offense characteristics. Maj. op. at 13-14 and 22; *see id.* at 30 (arguing this approach "makes a mockery

of North Carolina's carefully crafted sentencing scheme"). However, reading the plain language of § 802(44) to mean what it says does not second-guess any component of Simmons' state conviction. The North Carolina process of charging, convicting, and punishing Simmons was long decided and wholly independent of a later-in-time charge by the federal government for a different crime. As Justice Alito explained in *Rodriquez*, this later crime has no bearing on the earlier state crime and the state crime is merely a factor in sentencing regarding the later offense:

> When a defendant is given a higher sentence under a recidivism statute—or for that matter, when a sentencing judge, under a guidelines regime or a discretionary sentencing system, increases a sentence based on the defendant's criminal history—100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's "status as a recidivist." The sentence "is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one."

*Id.* at 1789 (citation omitted). Instead, I suggest the rationale set out here in dissent recognizes that Congress is the entity charged with determining the proper punishment for the later, independent federal offense for which Simmons now stands convicted.

Exercising its proper authority, Congress decided that the sentence for a conviction of later violating a *federal* criminal statute should be enhanced based on the defendant having a *prior* conviction that falls within the definition Congress chose to write. Congress further decided to define that enhancement in terms of the prior conviction being for an "offense" "punishable by a term of more than one year" imprisonment, rather than using language that would require that the defendant personally was subject to punishment for that

period. Applying § 802(44)'s plain language when reviewing the nature of a prior conviction in no way undermines or second-guesses the prior judgment of North Carolina regarding the earlier independent act that resulted in Simmons' state conviction and sentence. This approach provides no commentary about North Carolina's "carefully crafted sentencing scheme." The later federal court simply looks at the antecedent statutory offense to fulfill its duty under the federal statute authorizing an enhanced punishment for the separate federal crime.

I would also submit the majority's extrapolation of *Carachuri* and *Rodriquez* in this case fosters an unnecessary and burdensome sentencing regime. Instead of simply looking to the written scope of the antecedent statute of conviction, sentencing courts will be constrained to parse multiple variations of hundreds of possibly applicable statutes across the country. The prosecutor, counsel, judge, and citizen will not know where the defendant's acts fit upon the federal sentencing enhancement spectrum without delving into the particular acts underlying long-settled proceedings. The sentencing approach resulting from the majority opinion's reading creates an unworkable rule that unnecessarily complicates the already complex arena of federal criminal sentencing.

The reading of § 802(44) outlined in this dissent is, I proffer, one of plain meaning, common usage, and common sense. It does not suffer the infirmity found by the *Carachuri* court to be "counterintuitive and unorthodox." *Carachuri*, 130 S. Ct. at 2585 (internal quotation marks and citation omitted). Neither does it argue "for a result that the English language tells us not to expect." *Id.* Perhaps that type of result is what Justice Souter should have presaged in *Lopez* when he noted that "Congress, like 'Humpty Dumpty,' has the power to give words unorthodox meanings." *Id.* at 2585 (quoting *Lopez*, 549 U.S. at 34). Clearly, so do courts.

### III.

For the foregoing reasons, I do not find that the Supreme Court's decisions in *Carachuri* or *Rodriquez* require the result set forth in the majority opinion. The plain language of § 802(44) calls for an offense-specific analysis, determining whether a prior conviction is for an "*offense* punishable by more than one year imprisonment." As such, we follow the mandate of Congress to look to the maximum authorized punishment for any defendant convicted of the offense. Accordingly, I respectfully dissent and would affirm the judgment of the district court.

Chief Judge Traxler, Judge Wilkinson, Judge Niemeyer, and Judge Duncan join in this dissent.